## 9378

EDGEFIELD COUNTY v. GEORGIA-CAROLINA POWER CO.

(88 S. E. 801.)

1. PLEADING — ALLEGATIONS OF LAW OR FACT. — The allegation that defendant "wilfully and unlawfully raised the waters of the creek so as to destroy the public crossing and ferry * * * so as to obstruct the highway and approaches," no act being alleged or circumstance stated warranting inference that the thing done was negligent or wilful, states no cause of action, since the allegation is merely a conclusion of law.

2. PLEADING—DEMURRER—EFFECT.—A demurrer does not admit the truth of an allegation of a conclusion of law.

3. ACTION—JOINDER—ACTIONS FOR OBSTRUCTING AND DAMAGING HIGHWAY.—A county's cause of action for damages for obstructing a highway, given by the express terms of Civ. Code 1912, sec. 1947, may be combined in one action with its cause of action for damages for injuries to bridges, highways, or other property.

4. HIGHWAYS — OBSTRUCTION — DAMS—RIGHT TO DAMAGES.—Where the erection of a dam results in overflow of county highways, the county is not given a right of action for such damages by Civ. Code 1912, sec. 1947, under which damages are recoverable for violation of the duty to remove an obstruction in a highway on notice to do so.

5. HIGHWAYS—OBSTRUCTION—DAMS—CRIMINAL RESPONSIBILITY.—Where the erection of a dam authorized by an act of the legislature not limiting its height results in overflow of county highways, and it does not appear that careful construction might have avoided the overflow, indictment will not lie, since it would be a fruitless remedy.

6. HIGHWAYS—OBSTRUCTION—INJUNCTION.—Where county highways are overflowed by the erection of a dam authorized by a legislative act not limiting its height, and it does not appear that the overflow might have been avoided by careful construction of the dam, injunction will not lie.

7. HIGHWAYS—EASEMENTS—NATURE.—A highway is termed an incorporeal right. It is an easement, and when created it inheres in the land, and is not dependent upon the owner of the land.

8. EMINENT DOMAIN—COMPENSATION—SUBJECTS—"HIGHWAY."—A highway is a substantial right, the taking of which must be compensated.

9. DEDICATION—HIGHWAYS—ESTABLISHMENT.—A highway rests in deed, in prescription, or in dedication.

10. BRIDGES—COUNTIES—FERRIES—HIGHWAYS—REGULATION BY COUNTIES.—While under the State Constitution and laws the State has absolute control over the government of counties, and therefore over highways, the State has delegated to counties jurisdiction over roads, bridges and ferries by Civ. Code 1912, secs. 1928-2130, as to highways.

11. FERRIES—INJURY TO FERRY—ACTIONS FOR DAMAGES—PARTIES.—Where by the construction of a dam the operation of a county cable ferry has been rendered more difficult and expensive, an action for damages may be maintained by the county under the State Constitution and statutes, although the final authority over and title to the highway rests in the State.

12. COUNTIES—NATURE OF "COUNTY."—A county is but another manifestation of the State; it is an arm of the State.

13. HIGHWAYS—LEGISLATIVE AUTHORITY TO OVERFLOW.—The legislature may expressly provide in a power company's franchise that the company without wrong may overflow highways.

14. EMINENT DOMAIN — COMPENSATION — FLOODING PRIVATE PROPERTY.—Under constitutional provisions, although a power company builds a dam pursuant to legislative authority, if it thereby floods private property, it must make compensation to those particularly injured thereby.

15. EMINENT DOMAIN—COMPENSATION—FLOODING—PUBLIC PROPERTY.—Where public property is flooded by the erection of a dam, it does not fall within the protection of the Constitution requiring compensation to be made notwithstanding legislative authorization.

16. HIGHWAYS — ARTIFICIAL RESERVOIRS — RIGHT TO FLOW HIGHWAYS — CONSTRUCTION OF FRANCHISE.—In a legislative franchise to construct a dam the intent to subject highways to being overflowed thereby will not lightly be inferred, but must be a necessary implication from the words and the purposes of the grant.

17. Highways — Artificial Reservoirs — Right to Flow Highways — Construction of Franchise.—In a power company's franchise to build a dam, a general right to condemn easements does not give a right to overflow highways without condemning or paying damages therefor.

18. Highways — Artificial Reservoirs — Right to Flow Highways — Construction of Franchise.—In the absence of authority a power company building a dam is liable to a county for damages from the dam's flowing highways or interfering with ferries.

Before Gary, J., Edgefield, August, 1915.    Affirmed.

Action by the county of Edgefield against the Georgia-Carolina Power Company. From an order overruling demurrer to complaint, defendant appeals.

The complaint referred to in the opinion is as follows:

(1) That the plaintiff is, and was at the time hereinafter mentioned, a body politic and corporate under the Constitution and laws of the State of South Carolina, and has legal capacity to sue and be sued.

(2) That the defendant is, and was at the times hereinafter mentioned, a corporation duly organized under the laws of the State of South Carolina, and has legal capacity to sue and be sued in the Courts of this State.

(3) That during the years 1913 and 1914 the defendant and its agents and servants, acting within the scope of their duties, erected, or caused to be erected, a concrete dam across the Savannah River below and near the mouth of Stevens Creek, about 5 miles south of ferry and highways hereinafter referred to, the said concrete dam being 30 feet in height, and one end thereof abutting in Edgefield county

Footnote.—As to right to enjoin the obstruction of public ways, see *State ex rel. Att'y Gen'l* v. *Columbia Water Power Co.,* 82 S. C. 181, 63 S. E. 884, 17 A. & E. Ann. Cas. 343, 22 L. R. A. (N. S.) 435. As to injunction against nuisances, see *Woods* v. *Rock Hill Fertilizer Co.,* 102 S. C. 442, 86 S. E. 817. As to injunction by municipality against nuisances, see notes in 42 L. R. A. 814; the State as a party in such actions, see notes 19 L. R. A. (N. S.) 1173.

and State of South Carolina, and that the defendant completed and closed the said dam on or about the 10th day of January, 1914, and since said time has maintained and still maintains the said dam, and intends to maintain the same for all time hereafter.

(4) That the county of Edgefield at the time the said dam was completed and closed, and for a great number of years prior to said time, to wit, for not less than 50 years, has owned and maintained a public highway leading from Plum Branch, in the county of Edgefield, via Parksville, Modoc, and Clarks Hill, in said county, across Stevens Creek at Shaw and McKie's Mill to the Martin town road, another public highway owned and maintained by the county of Edgefield, at a point near where Anderson Branch crosses the Martin town road; that the said public highway is, and has for a number of years been, one of the most important highways of the county, and is a necessary and the only outlet for citizens of said county residing west of Stevens Creek to the city of Augusta, the nearest market for said section, and the town of Edgefield, the county seat of said county, as well as to the churches in said section; that the said highway had a ford across said creek at Shaw and McKie's Mill at a point about 10 yards below where the old millrace emptied in said creek, and the said county of Edgefield owned the said ford and the right and easement thereto as a crossing for said highway since the time it had owned and maintained said highway; and that the said ford was used as a part thereof.

(5) That in order to afford a crossing for said highway across Stevens Creek at Shaw and McKie's Mill, in Edgefield county and State of South Carolina, in addition to said ford, the county of Edgefield has for a great number of years, to wit, not less than 20 years, owned, operated, and maintained a free public ferry across Stevens Creek at said point, and at the public expense has during said time employed a ferryman to have charge of and operate said ferry; that during

all of said time up to the time of the erection and completion of the dam of the defendant above mentioned the width of Stevens Creek at the point of Shaw and McKie's Mill, where said ferry was operated, was 170 feet, and the depth of said stream was ordinarily 5 feet, and that during all of said time it was practicable for the county of Edgefield to operate the flat at said ferry by means of a wire cable attached to posts or trees on each side of said stream, and that the said flat could be operated by one man, to wit, the man employed by the county to have charge of and operate said ferry, or his servant, and the flat could be put across the stream of said creek by the ferryman in less than 3 minutes, and that all citizens of the county of Edgefield desiring to use said highway and cross Stevens Creek at said point were able to obtain ready and speedy passage across said stream for themselves and their vehicles, and that at the times when the waters of Stevens Creek were swollen by heavy rains the passage across the stream in the said flat was not interfered with or retarded, except in cases of extraordinary flood; that the ford across said creek above referred to could be used and was used as a means of crossing said creek, except in times of high water, and the right and easement to said ford was of great value to the county of Edgefield.

(6) That since the defendant has completed its dam and closed the same so as to obstruct the waters of Savannah River and Stevens Creek the water has been backed up and ponded into Stevens Creek to such an extent as to make the waters of said creek at Shaw and McKie's Mill overflow the banks of said creek and to flood and destroy the approaches to said banks for the flat of the ferry operated by the county of Edgefield as aforesaid, and also to flood and destroy the public highways leading to said ferry on each side of the said creek for a distance of at least 180 feet on one side of the said stream and 400 feet on the other side, and to destroy and render impassable the said ford, and that the rise in the waters of the said stream at the said point at Shaw and

McKie's Mill on said Stevens Creek where said ferry has heretofore been maintained by the county is permanent, and that the water of said Stevens Creek at said point is now 571 feet in width, and that the depth of said water has been greatly increased, and that the said water at said point now stands 17 feet in depth in the bed of the stream as it existed before said dam was erected, and to various depths on the shores thereof as far as the waters reach at present; that this condition of the creek at the point above mentioned is permanent, and that it is the purpose and intention of the defendant to permanently pond the water at its present height, if not more.

(7) That by raising and ponding the waters at the said point at Stevens Creek as aforesaid the defendant has destroyed the banks and landing places for the flat, which was heretofore maintained by the county of Edgefield as a public highway, and has obstructed, destroyed, and submerged, and intends to continually obstruct and submerge, at least 180 feet of the public highway of the county of Edgefield on one side of said stream and 400 feet on the other, and has rendered the flat heretofore used by said county and operated by means of a wire cable stretched from shore to shore utterly useless and impracticable, and has rendered impassable and destroyed said ford across said creek, all to the great damage of Edgefield county and to its citizens generally.

(8) That in order to afford a crossing for its citizens who use the said highway across Stevens Creek at Shaw and McKie's Mill since the erection and completion of the said dam by defendant, the county of Edgefield has used as a temporary means of crossing said stream another flat, but that on account of the great increase in the width of the stream it is no longer practicable to operate a flat by means of the simple device theretofore used by the county of Edgefield, and it now requires two men to operate the flat across said stream, and that even with two men it is much more

dangerous and difficult to operate said flat than it was to operate a flat with one man before the said stream was widened by the defendant, and it requires a good deal longer time to cross said creek, and that on account of the great depth of water at said point of crossing occasioned by the dam of the defendant there is danger to life and property in crossing said stream on said flat, and during ordinary rise in the stream occasioned by rains and high water the said flat as at present operated by the county is very dangerous and almost impracticable to be operated, due to the fact that on account of the great length of the cable with which said flat is operated, if there is even a moderate current in the stream, the said cable sags, and the flat drifts out of its course, and there is great danger of upsetting the same, to the destruction of the lives and property of the persons thereof conveyed.

(9) That before the erection and completion of the said dam of the defendant the county of Edgefield, by its duly constituted authority, to wit, the county supervisor and county board of commissioners of Edgefield county, notified the defendant in writing not to in any way interfere with or affect any of its public roads, highways, or crossings, and referred specially to the crossing and highway at Shaw and McKie's Mill at Stevens Creek and the public ferry thereat maintained, and after the defendant completed and closed its said dam, and the rise in the waters of Stevens Creek occasioned thereby had obstructed, submerged, and destroyed the ford and ferry of the county of Edgefield across Stevens Creek at said point, the county board of commissioners notified the defendant, its officers and agents, of the damage thereby done, and · demanded that they remove the same forthwith, but that the defendant has failed and refused to do anything to relieve the damages to the said highway and crossing of the county as hereinabove set forth; that, notwithstanding such notice by the county of Edgefield, and notwithstanding that it had never acquired any right to

interfere with the public highways and crossings of said county, the defendant wilfully and unlawfully raised the waters of said creek so as to destroy the public crossing and ferry at Shaw and McKie's Mill in said county, so as to obstruct the highways and approaches leading thereto, as hereinabove set forth, and negligently failed to protect, provide for, and preserve the same, in that it failed to provide a bridge or adequate ferry to afford a crossing for said highway at said point.

(10) That it is necessary for the county of Edgefield to provide a safe crossing at Shaw and McKie's Mill over Stevens Creek for the use of its citizens and the public generally, and that on account of the obstruction and submerging of its said highways, ford, and ferry it will either be necessary for the county of Edgefield to construct a bridge at said point at great cost, or to provide an expensive ferry for transporting passengers across said stream, and that the county of Edgefield has been peculiarly and specially damaged by the acts of the defendant in raising the water of Stevens Creek so as to destroy and submerge the public highways of the plaintiff and its public ferry and its ford, as hereinabove stated, in the sum of $50,000.

(11) That A. A. Edmunds, county supervisor, N. L. Broadwater and James DeVore, county commissioners, are, and were at the times mentioned in this complaint, the legally constituted county board of commissioners of Edgefield county, in said State, and that this action was authorized and instituted by said county board of commissioners for and in the name and behalf of the county of Edgefield.

Wherefore, the plaintiff demands judgment against the defendant for the sum of $50,000, and for the costs and disbursements of this action.

The demurrer follows:

(1) Because the plaintiff fails to allege in the complaint that the defendant was without legal authority from the

General Assembly of the State of South Carolina and from the Congress of the United States to build, maintain, and use the dam described in the complaint, or that the dam was not built or is not being maintained or used in the manner prescribed by such acts, and does not allege that the said dam was built or is being maintained and used in a negligent, improper, unskillful, or illegal manner, and fails to allege that the increase complained of in the width and depth of Stevens Creek and the obstructing and submerging of the approaches of the public highway to the ferry over said creek was not a necessary and unavoidable consequence of the exercise by defendant by the authority so granted it to build, maintain, and use said dam.

(2) Because it appears on the face of the complaint that the dam described in the complaint was authorized under the laws of the State of South Carolina and of the United States, and that the defendant was acting within the scope of their duties in erecting or causing to be erected said dam. The law of the State of South Carolina conferring said authority upon this defendant to build said dam is contained in the act of the legislature of this State entitled "An act to incorporate the Georgia-Carolina Power Company," approved March 1, A. D. 1909, and is contained in the Public Laws of said State in the twenty-sixth volume of the Statute at Large, p. 398, of which said statute this Court will take judicial cognizance, it being a public act. The act of Congress of the United States conferring upon this defendant the authority to erect and maintain said dam is contained in an act of said Congress entitled "An act to authorize the building of a dam across the Savannah River at or near the mouth of Stevens Creek between the counties of Edgefield, South Carolina, and Columbia, Georgia, which said act was approved on the 5th day of August, 1909," etc. (36 Stat. 180, c. 10), in accordance with the provisions of another act of Congress entitled "An act to regulate the construction of dams across navigable waters," which said

act was approved on the 21st day of June, 1906 (34 Stat. 386, c. 3508), of which said acts this Court will take judicial cognizance. The plaintiff does not allege that the said dam was not built or is not being maintained and used in the manner and in accordance with the provisions prescribed by said acts, or that the said dam was built and is being maintained and used in a negligent, improper, unskillful, or illegal manner.

(3) Because it appears on the face of the complaint that the wrong and injury complained of against this defendant consists in its having increased the width and depth of said Stevens Creek, and in obstructing and submerging the approaches of the public highway on either side of said stream at the point where said public highway crosses the same by means of a ferry at or near Shaw-McKie Mill; that the said wrong and injury complained of, if not authorized by said acts, would constitute a nuisance, and would be an indictable offense under the laws of said State, and would not constitute a cause of action for which the plaintiff is entitled to recover damages, and, if authorized by law, it would be neither a nuisance nor a ground for damages of which plaintiff could complain.

(4) Because it appears on the face of the complaint that the county of Edgefield "is a body politic and corporate under the Constitution and laws of the State of South Carolina;" that, as such body politic and corporate, it has control, through its commissioners, of the public highways of the county under the authority from the General Assembly of South Carolina as contained in the general statutory laws of the State, subject, however, to the paramount control of the State itself through its General Assembly; that by a public act of the General Assembly of this State approved March 1, 1909, of which the Court will take judicial cognizance, the General Assembly of this State authorized the defendant to build, maintain, and use the dam described in the complaint, and there is no allegation in the complaint

that the flooding and submerging of the highway at Stevens Creek was not a necessary and unavoidable consequence of the exercise of the authority so granted defendant by said act. Therefore, even if the plaintiff or the public has been put to additional inconvenience and expense, as alleged in the complaint by reason of said authorized and lawful construction, the damages so suffered are *damnum absque injuria,* and do not constitute a cause of action against this defendant.

*Messrs. Wright & Wright, Sheppard Bros.,* and *J. B. Salley,* for appellant, cite: *Acts incorporating defendant:* 26 Stats. at L. 398 and 1038. *Act of Congress authorizing dam:* Acts of Congress, 1909, p. 180. *Act of Congress to regulate the construction of dams across navigable streams, June 21, 1906:* Gen'l Stats. of U. S., p. 386. *Allegations as to character of construction:* 34 S. C. 66; 28 S. C. 396-7; 47 S. C. 484; 33 S. C. 216, 218. *Unnecessary obstruction of highway:* Civil Code, sec. 1947. *Construed in connection with charter:* 4 L. R. A. 429; 62 Am. St. Rep. 164; 37 S. C. 551; 22 Mich. 322; and submit: *The act of our General Assembly creating and incorporating the defendant, by its own terms, is made a public act of which the Court will take judicial notice and read it into the complaint as effectually as though it were fully set forth therein. The Court will also take judicial notice of the act of Congress in question:* 47 S. C. 474 and 482; 89 S. C. 124; 17 Enc. of Law 928, 930, 931, 934; 53 S. C. 588; Constitution of 1895, art. VI, sec. 4; 69 S. C. 356; 169 Fed. 162. *Where an obstruction of a stream (which is a public highway) is permitted by authority of the General Assembly, no damages can be recovered, on account of such obstruction, unless the obstruction was not made in accordance with the provisions of the act authorizing it, or unless the work was done in a negligent, unskillful or improper manner:* 34 S. C. 62; 47 S. C. 464; 71 S. C. 156; 76 S. C. 325; 101 S. C. 158; 67 S. C. 181; 71 S. C. 241; 28

S. C. 23; 93 S. C. 125. Cite: *As to ownership of highways:* Elliott, Roads and Streets (2d ed.), secs. 421, 423, 651, 652; 57 Me. 425; 2 Am. Rep. 64; 98 S. C. 272; 42 N. E. 120; 9 Am. St. Rep. 144; 27 S. C. 419. *Navigable waters as highways:* Const., art. I, sec. 28; art. XIV, sec. 1; 47 S. C. 480; 9 Am. St. Rep. 142; 44 Am. St. Rep. 220. *No peculiar damage suffered by county:* 1 Hill 365; 30 S. C. 539; 46 S. C. 327; 49 S. C. 95; 68 S. C. 540; 82 S. C. 181; 1 Brevard 125.

*Messrs. B. E. Nicholson* and *J. Wm. Thurmond,* for respondent, cite: *As to counties:* Const., art. VII, sec. 9; Civil Code, sec. 587. *Obstructions to highways:* Civil Code, sec. 1947; Crim. Code, sec. 648; 69 S. C. 353. *County may maintain action for injuries:* 11 Cyc. 467; 37 Cyc. 252; 1 Brev. 134; 88 S. C. 484; 9 S. C. 1; 16 S. C. 241; 29 S. C. 584; 35 S. C. 508; 11 S. C. 360; 29 Cyc. 1197, 1198, 1199, 1200, 1201. *Construction of grant:* 44 Am. St. Rep. 220; 81 Ky. 225; 15 Cyc. 614; 2 Gray 1; 9 Am. St. Rep. 142; 4 Cush. 63; 23 Minn. 167; 68 N. Y. 167; 23 Ohio St. 523; 13 Am. Rep. 255; 95 S. C. 268.

April 27, 1916.

The opinion of the Court was delivered by Mr. Justice Gage.

This case comes here upon an appeal from an order of the Circuit Court made upon demurrer to the complaint. It arises out of the construction in 1913 and 1914, pursuant to legislative authority, by the defendant, of a concrete dam 30 feet high across Savannah River below the mouth of Stevens Creek, which flows through Edgefield county and empties itself into Savannah River. 26 Stats. 398. The plaintiff has stated its case by the complaint, which needs to be reported, and, of course, the allegations of fact therein made are for the present deemed to be true. The demurrer will also be reported. It was overruled by the Circuit Court.

There are six exceptions. The first and second charge errors of commission, and the other five charge errors of omission. The appellant has argued these under five heads, and the argument makes these issues:

First. Does the complaint recite acts and circumstances from which wilfulness and negligence are inferable?

Second. Do the allegations of the complaint bring the case within section 1947 of the Code of Laws?

Third. Did the act of the General Assembly of this State not only expressly authorize the defendant to erect the dam, but impliedly authorize it to flood the highway, and ought the complaint to have alleged that the dam was not erected in accordance with the requirement of the said acts, or the defendant was negligent in the construction of the dam?

Fourth. Did the General Assembly by the act authorizing the construction of the dam thereby take from the plaintiff the right to complain at the performance of the work?

Fifth. Is the alleged wrong of the defendant only a public nuisance, the remedy for which is not a civil action for damages or for injunction, but a criminal action by indictment?

The first and last are minor issues. The others are of more serious import. We shall essay to compass all five of the questions, but not by number, and not in their order.

1. The allegation of the complaint that the power company "wilfully and unlawfully raised the waters of the creek so as to destroy the public crossing and ferry, * * * so as to obstruct the highway and approaches leading thereto," states no cause of action. No act is alleged and no circumstance is stated which, if true, would warrant an inference that the thing done was negligent or was wilful. The allegation as made is only one of law, and a demurrer does not admit the truth of such an allegation. *Wallace* v. *Railroad,* 34 S. C. 67, 12 S. E. 815. We are, therefore, of the opinion that the quoted allegation, found

near the close of paragraph 9, did not state a cause of action against the defendant.

2. The plaintiff rests its action in part upon the statute (section 1947 of the Code of Laws), but it does not rely solely upon the statute; for it claims that, "independent of the statute, a county has the right to maintain an action to recover damages for injuries to its bridges, highways, or other property." It has been held, and we so hold, that the two wrongs may be combined in one action. *Smith* v. *Gilreath,* 69 S. C. 353, 48 S. E. 262. We think plainly that the statute was not enacted to meet a case like the instant case; and we gather that from a consideration of all its language. The central idea of the statute is to require the removal of obstructions in a highway under penalties. The words which indicate this are "remove" and "remain." If that be so, and it clearly is, we think it will be contended by the plaintiff that the General Assembly, which authorized the construction of a great and permanent structure, intended that it should not remain, but should be removed, upon notice by "any person passing along such * * * highway." It is true that after directing a removal of the obstruction, and after contemplating a remaining of the obstruction, the act prescribes first a penalty, and then a liability to suit by the county for all damages arising to any highway. But such liability to the county depends upon the duty of the defendant to have removed the obstruction on notice to do so. We think, therefore, that any right of action which the plaintiff may have does not spring out of the statute.

3. And in the logical order we pass now over to that question last hereinbefore stated, and that in short is this: Is indictment the only remedy for alleged wrong? The answer to that question is the same as that just made in the construction of the statute. Indictment has for its prime object the abatement of a nuisance, which is the removal of the obstruction. It is true the Court

upon conviction may impose a moderate fine; but removal of the obstruction is the thing aimed at; the law's object upon indictment is not so much to punish the wrongdoer as to open the way. But the defendant does not admit—it strenuously denies—that, if it should be found guilty of remotely obstructing a highway by the dam, a Court could direct it to remove the dam. That would be to order the removal of that which the General Assembly had directed to be erected. Upon such supposed conviction the Court could not even order the dam to be lowered. The General Assembly did not limit its height. There is no allegation in the instant case that the dam might have been so carefully constructed as to avoid the consequent overflow of the highway. Indictment, therefore, would not lie, for it would be a fruitless remedy; and what is said about the remedy of indictment is relevant to the remedy of injunction. A Court could not enjoin the erection or the maintenance of a structure like that in the instant case upon any ground suggested in the record.

In answer to the suggestion that for a public wrong a single individual may not sue unless the damage to him has been peculiar, this action is not by one of the citizens living along Stevens Creek. In that event it might have been answered that he had suffered no peculiar injury unlike that his uncomplaining neighbor had suffered, and that there was no special remedy for him when he had suffered a common wrong. The action here is by the community—that is, the county—which in its artificial and corporate capacity represents for some purposes the public. And while, perhaps, the State might have sued, yet the county has sued, and the interesting question whether it has a cause of action will be considered under the head of the other stated issues.

4. And we come now directly upon that issue, which is: Has the county stated a cause of action? The before recited issues, in one form and another, raise that question, but under several and somewhat differing aspects. The aspects

are these: The defendant asserts that the highway is but an easement in the State, that the State might with impunity have discontinued the highway, and that the State has only done by necessary implication that which it might have done directly and expressly. The defendant further insists in that same connection that, although the statutes of the State (section 1947) make it unlawful to obstruct a highway, yet, when another statute has by implication permitted the defendant to do that thing, then the former statute does not operate. The defendant further asserts that the county had no such ownership of the highway and ferry as to render their serious impairment by the defendant a wrong to the plaintiff, and that the constitutional prohibition to take private property without making compensation therefor has no application to the taking of public property. The initial and dependent issue of law is the right of Edgefield county to maintain the action at all, and that for the reason it had no right, and therefore has suffered no wrong. While this issue is not made by the letter of the exceptions, it is fairly within the fifth exception, and it was elaborately argued by the appellant. The subject matter in issue is a highway where it is crossed by a nonnavigable stream, and a flatboat across the stream, to transport the public free of cost, and operated by a cable.

A highway is termed an incorporeal hereditament; it is an easement; when created it inheres in the land, and is not dependent upon the owner of the land; it is a substantial right, the taking of which must be compensated; it rests in deed, in prescription or in dedication. 2 Blackstone 444; 2 Wash. Real Prop. 301; Elliott on Roads and Streets, 309. The last named authority declares that at the common law public roads were under the charge of local authority, like towns, shires, counties, etc.

In this State prior to 1868 the legislature, directly by act, took jurisdiction over public buildings, roads, bridges, and ferries. When a public road was to be opened or a public

road to be closed, it was done directly by the terms of an act, or by commissioners named by the act, or generally constituted by statute. See *Ex parte Withers,* 5 S. C. L. (3 Brev.) 83 ; *State* v. *Com'rs,* 46 S. C. L. (12 Rich.) 300. Indeed, this ferry over Stevens Creek was authorized by act of the legislature. 13 Stats. 467. But by the Constitution of 1868 jurisdiction over roads, highways, ferries, and bridges was vested in a board of county commissioners. Art. No. IV, sec. 19. And in 1868 the legislature passed an act defining the powers and duties of the board of county commissioners. Rev. Stats. 1873, p. 146. Thereby that board was empowered to open new roads, to work roads and to levy taxes therefor. The Constitution of 1895 by implication abolished the board of county commissioners, and by implication left the government of the counties in the hands of the legislature. The legislature since 1895 has committed to varying bodies, sometimes called commissioners, and sometimes called supervisors, the same full jurisdiction over roads, bridges, and ferries which was exercised by the old county commissioners under the Constitution of 1868. Code of Laws, tit. 10, c. 28, sec. 1927, *et seq.*

We are, therefore, of the opinion that, under the Constitution and laws of the State, the State has absolute control over the government of counties, and, therefore, over the highways. But we are of the opinion that the State has by statute delegated to the counties jurisdiction over roads, bridges, and ferries. The General Assembly has empowered the counties to open new highways, and to close old highways; it has conferred upon the counties control and supervision of highways and ferries; it has also empowered the counties to establish free ferries; it has devolved upon counties the duty to maintain the public roads at its own expense under penalties, and to levy taxes upon the citizens of the county for the construction and maintenance of roads. Code of Laws, *supra.*

In the instant case the county of Edgefield owned and operated by cable a free flatboat to transport the public across Stevens Creek at the place in question; and the flooding of the creek has rendered the operation of the boat difficult, and has rendered the necessity to employ two ferrymen where one was needed before.   The appellant admits that Edgefield county may own a courthouse, a jail, a poorhouse, mules, and road machinery, but yields to it no authority over the roads it pays for and works.   Granting, then, for it is true, that final authority over and title to that public easement called the highway rests in the State, yet under the Constitution and statutes we are of the opinion that the county may maintain the action it has pleaded. See Elliott on Roads and Streets, p. 321; 37 Cyc., p. 252.

The county is but another manifestation of the State; it is an arm of the State; and this State has committed to it the full jurisdiction of highways.   It is obvious the legislature might have expressly authorized this action by the county; and it is just so manifest the legislature has done that by necessary implication.   The State indicts for obstruction of the highway; writs are required to run in the name of the State.   Const., art. V, sec. 31.   The right to pass and repass the highway is in all the people of the State; and where the right is the remedy must proceed for the offense.   *Abbeville* v. *Leopard,* 61 S. C. 104, 39 S. E. 248.

5. We come now to the postulate that the act of the General Assembly by which the dam was authorized to be constructed was a necessary authorization to flood the highway.

It is true the State, independent and superseding the will and action of Edgefield county, might have closed up the road and ferry.   And that carries with it the corollary that the act of the legislature in the instant case might have expressly provided that in the construction of the dam the company might flood without wrong those highways within the zone of high water.   And it is true that, if

the company should thereby flood the private property of the citizen, then under constitutional protection it would need to make compensation to those persons who suffered a particular injury from the nuisance. *McDaniel* v. *Power Co.,* 95 S. C. 269, 78 S. E. 980.

But public property, we think, does not fall within the protection of the Constitution. *Leitzsey* v. *Power Co.,* 47 S. C. 479, 25 S. E. 744, 34 L. R. A. 215; Elliott on Roads and Streets, 484. That which the State has set apart for one public purpose the State may dedicate to another and higher public purpose. The supreme good of the public—*salus republicæ suprema lex*—is the ideal to be accomplished, and it is in the keeping of the State. So that in the instant case it would have been obviously within the power of the legislature to have expressly subjected the highway in Edgefield to be overflowed by the waters of Stevens Creek and Savannah River, and Edgefield could not complain about it.

But such intent will not be lightly inferred; the intent to do so must be a necessary implication of the words of the grant and the purpose of the grant. Folger, J., in *Matter of City of Buffalo,* 68 N. Y. 167, reported in 9 Am. St. Rep. 143, note; Elliott on Roads and Streets, 484.

It is true large public interests center about the construction of a task like that involved in damming a great river. The task is a public one, although conceived by private initiation and undertaken by individual means; for its accomplishment was dependent upon the consent of the State. But highways are of great import also. They are the arteries of the landed State. To block all of them would not only paralyze industry, but it would strangle liberty. The simple right of them must not yield to the demands of a highly developed and complicated civilization, unless the State, the guardian of both, has plainly so declared it.

Looking, then, to the statute which conferred upon the defendant its right and powers (*supra*), section 3 provides: "Said corporation shall have the right and power to condemn any and all lands, property, water, riparian or other rights, or easement, or any interest therein necessary to the construction, erection, operation and maintenance of its power plants, pole lines and dams. Such property, lands, water, riparian or other rights, easements and privileges, shall be condemned in the same manner and the method of compensation to be the same as in the case of condemnation by railroads, canal and turnpike companies, provided by the laws of this State."

The right therein granted to condemn easements is general. Had the statute declared by express words that the power company might condemn this very highway, then the right to do so would certainly rest in the power company. The pleadings, however, have not challenged the right of the power company to condemn, and it is, therefore, not necessary now to decide if under the statute it has that power. The plaintiff has sued for damages, and the power company has shown no right to flood the highway, and is, therefore, liable to the plaintiff for the damages which have followed thereupon.

The judgment of the Circuit Court is affirmed, and the defendant may answer within 20 days after the filing of the remittitur.

MR. CHIEF JUSTICE GARY did not participate in the hearing or decision of this case.