12515

STATE v. HUGHES
SAME v. SIMMONS

(145 S. E., 297)

June, 1927.

*Messrs. Robert McC. Figg, Jr.,* and *J. N. Nathans,* for appellants,

*Messrs. James Allan, Solicitor,* and *J. C. Long,* for respondent.

November 1, 1928.

The opinion of the Court was delivered by MR. JUSTICE BLEASE.

The defendants, John Hughes and A. V. Simmons, were indicted at the June, 1927, term of the Court of General Sessions for Charleston, on the charge that—

Each "did knowingly and unlawfully cause the highway or public road known as the 'Old Wando Road,' which runs west from the Meeting Street Road to be unlawfully obstructed, to wit: by causing to be dug trenches and erecting fences across said road at a point on the east and west sides of the tracks of the Atlantic Coast Line Railroad, where said Railroad tracks cross said highway or public road, to such an extent that the said road could not be travelled upon against the peace and dignity of the State."

By consent of their counsel and counsel for the State they were tried together.

The defendants did not testify, but it was stipulated by their counsel that their testimony would be to the effect that they were employees of the Atlantic Coast Line Railroad Company, and that they placed the obstructions complained of upon said road under the authority of the sanitary and drainage commission for Charleston County, given to them through their employer, the said Atlantic Coast Line Railroad Company. This was agreed to by the Court and counsel for the State.

At the close of all the testimony, counsel for the defendants made a motion for a directed verdict of not guilty on the grounds: (1) That the road in question was under the control of the sanitary and drainage commission for Charleston County, and that same was validly relocated by said commission, and the defendants were its agents in constructing the obstructions complained of; (2) that the testimony failed to show a road of the character for the obstruction of which an indictment lay at common law, but on the contrary showed a public highway or road covered by Section 601, Vol. 2, Criminal Code of 1922, under which indictment would have to be brought; (3) that the testimony failed to show a neighborhood road.

The Court overruled the motion, and the case was submitted to the jury under the instructions of the Court. In his charge, the presiding Judge instructed the jury as follows:

"If a road running from one public road across to another public road, or public place, such as a town or a village, or a community where numbers of people live, and if all the people travel it for all purposes generally under a claim of rightful travel, and travel it for twenty years, that is a public road. It is often called a neighborhood road, but it is a public road if they travel it in that way for twenty years or more. *And if a road becomes a public road under those conditions I charge you that the County Commissioners have no right to close it; the Sanitary and Drainage Commission has no right to close it; nobody has any right to close that road.* The public has a right to use that road as long as they wish to use it."

We have italicized certain language used by the Judge, to which exception is taken, and which we understand expressed the Court's view of the law, which view moved him in refusing the motion of the defendants for a directed verdict. A verdict of guilty was rendered. Thereupon a motion for a new trial was made by the defendants upon the same grounds urged for a directed verdict, which motion was refused by the Court. The defendants were each sentenced to serve one day in jail or pay a fine of $1.

Counsel for the State then moved in the open Court for an order directing the defendants to remove the obstructions alleged to have been erected by them, and to restore the crossing to its former condition. After argument of counsel, the Court passed an order directing the removal of the obstruction and the restoration of the crossing without prejudice to the rights of the defendants in their appeal from said conviction and sentence. Thereafter, notice of appeal from said conviction and sentence and from the said order was duly served by both defendants.

The exceptions of this Court, ten in number, need not be considered separately. We think they substantially raise the following questions:

1. Did the sanitary and drainage commission for Charleston County have authority to close the crossing in question?

2. Is the Old Wando Road such a road, for the obstruction of which an indictment will lie; and did the Court correctly define a neighborhood road?

3. Did the Court err in ordering the removal of the obstruction and the restoration of the crossing to its former condition?

The first and third of these questions will be considered together. It will be observed that defendants admit placing the obstructions upon the road in question, and claim as justification therefor the direction and authority of the sanitary and drainage commission for Charleston County. If said commission had authority to close the crossing, it follows that defendant's motion for a directed verdict should have been granted, and that the trial Judge erred in ordering the removal of the obstruction and restoration of said crossing to its former condition. We proceed then to determine whether or not the commission had such authority.

Section 2 of Act No. 162, Acts 1909, p. 306, is as follows:

"The said Commissioners [the Sanitary and Drainage Commissioners for Charleston County] shall have the same power and authority over the public roads and highways and the right to condemn land for said use as are now by law given to county boards of commissioners."

Section 3 of that Act repeals all acts and parts of acts in conflict therewith.

Section 2906, Vol. 3, Code of 1922, gives the county board of commissioners "full power and authority to order the laying out and repairing of public roads where necessary, to appoint where bridges or ferries or fords shall be made, to discontinue such roads, bridges and ferries as

shall be found useless, and to alter roads so as to make them more useful." Under Section 2907 of the same Volume, the county boards of commissioners "may also open new public roads and widen or change the location of old public roads, where, in their judgment, such change would be for the material interest of the traveling public."

In the case of *Township Commissioners, etc. v. Charleston Mining & Manufacturing Co.*, 76 S. C., 382, 57 S. E., 201, this Court held that the county board of commissioners of Charleston County had jurisdiction, authority and control of roads acquired by prescription, acquiescence, or adverse user in addition to the roads and highways laid out by the acts of the General Assembly or by the order of Court or by order of the county board of commissioners. The Court held in effect that it was not the purpose of the Legislature to limit the provision of the above-quoted Sections 2906 and 2907 to the roads mentioned specifically therein, but that its provisions equally applied to all roads, however the public rights therein might have been acquired.

In the case of *Edgefield v. Georgia-Carolina Power Co.*, 104 S. C., 311, 88 S. E., 801, Mr. Justice Gage, speaking for the Court, said:

"A highway is termed an incorporeal hereditament; it is an easement; when created it inheres in the land, and is not dependent upon the owner of the land; it is a substantial right, the taking of which must be compensated; it rests in deed, in prescription or in dedication. 2 Blackstone, 444, 2 Wash., Real Prop., 301, Elliott on Roads and Streets, 309. the last-named authority declares that at the common law public roads were under the charge of local authority, like towns, shires, counties, etc.

"In this State prior to 1868 the Legislature, directly by act, took jurisdiction over public buildings, roads, bridges, and ferries. When a public road was to be opened or a public road to be closed, it was done directly by the terms of an Act, or by commissioners named by the Act, or generally constituted by Statute. See *Ex Parte Withers*, 5 S.

C. L. (3 Brev.), 83 ; *State v. Com'rs,* 46 S. C. L. ( 12 Rich.),
300. * * * But by the Constitution of 1868 Jurisdic-
tion over roads, highways, ferries, and bridges was vested
in a board of county commissioners. Article No. IV, Sec-
tion 19. And in 1868 the Legislature passed an Act de-
fining the powers and duties of the board of county commis-
sioners. Rev. Stats., 1873, p. 146. Thereby that board was
empowered to open new roads, to work roads and to levy
taxes therefor. The Constitution of 1895 by implication
abolished the board of county commissioners, and by impli-
cation left the government of the counties in the hands of
the Legislature. The Legislature since 1895 has committed
to varying bodies, sometimes called commissioners, and
sometimes called supervisors, the same full jurisdiction over
roads, bridges, and ferries which was exercised by the old
county commissioners under the Constitution of 1868."

The case of *Gilmer, v. Hunnicutt,* 57 S. C., 166, 35 S. E.,
521, which arose after the Constitution of 1868, and while
it was in effect, is of peculiar interest in tracing the growth
of the power and authority over roads and highways which
are now exercised by county boards of commissioners under
the Acts of the General Assembly. now in force. The case
involved the validity of the action of the county board of
commissioners of Oconee County, under Act of December
18, 1891 (20 Stat., 1215), which provided:

"First. That the County Commissioners * * * of
Oconee County are hereby authorized and empowered to
change the location of any of the public roads * * *
in Oconee County, where in their judgment steep hills and
rough places in said roads can be avoided by so doing."

The commissioners had made the new road under this
Statute and had abandoned the old portion of the road.
The Court refused to disturb their action and said:

"If abandoned according to the method prescribed in such
cases, no duty devolves upon the defendant commissioners
to keep it in repair."

From these authorities we conclude that the board of county commissioners (and the sanitary and drainage commission of Charleston County has the same power and authority) has control over neighborhood roads as well as other public roads; that if it abandons a road or a portion thereof according to the method prescribed by law, it is under no legal obligation to maintain such abandoned road or portion thereof.

The owner of land on a public highway or road has no property or other vested right in the continuance of it as a highway at public expense. The board of county commissioners, or other body invested with like power and authority, may abandon or discontinue said road, as a public highway, and if damage results to the landowners over which said road passes by reason of such abandonment, it is *damnum absque injuria,* provided the road is not closed. *Wilson v. Greenville County,* 110 S. C., 321, 96 S. E., 301.

As a general rule, the abandoned road may not be closed without the consent of the owners of the land over which said abandoned road passes, or of those whose property fronts thereon. *Powell v. Spartanburg County,* 136 S. C., 371, 134 S. E., 367.

But with the consent of the owners of the land over which said abandoned road passes, and of those whose property fronts thereon, said abandoned road or portion may be closed. *Cherry v. Rock Hill,* 48 S. C., 553, 26 S. E., 798.

The board of county commissioners or other body vested with like power and authority, in laying out and repairing roads where necessary, discontinuing such roads as shall be found useless, altering roads so as to make them more useful, and changing the location of old roads, where, in their judgment, such change would be for the material interest of the traveling public, is a *quasi* Court. *State v. Stackhouse,* 14 S. C., 417.

Upon the authority of *State v. Stackhouse, supra,* it has been decided that the judgment of a board of county commissioners cannot be collaterally attacked for irregularities. *State v. Kendall,* 54 S. C., 192, 32 S. E., 300. Until the judgment of the sanitary and drainage commission of Charleston County was set aside in some proper legal proceeding, the judgment of that commission, ordering the road in question to be closed, remained in full force. It followed, of course, that one who acted under the authority of the commission in the closing of the road was not guilty of a criminal offense in carrying out the orders of the commission.

Any issues as to any alleged irregularities in the proceedings by the commission, or any abuse of the discretion given to the commission under the law, were not properly before the lower Court, and such issues are not at this time properly before this Court. The only question for decision here is as to the authority of the sanitary and drainage commission of Charleston County to close the road, which the defendants were charged with obstructing. Since we have held that the commission had the authority to direct the closing of the road, subject to the review of its action by the proper tribunal, it necessarily follows that the directed verdict moved for by the defendants should have been granted.

It is the judgment of this Court that the judgment of the lower Court be reversed, and that a verdict of not guilty be entered in favor of the defendants as provided by the rules of this Court.

Mr. Chief Justice Watts and Messrs. Justices Cothran, Stabler and Carter concur.