## 9819

## TRUSTEES OF UNIVERSITY OF SOUTH CAROLINA v. CITY OF COLUMBIA.

### (93 S. E. 934.)

1. PRORERTY—PRESUMPTIONS—LAND TITLE.—There is a presumption that the State at one time owned all lands, and in an action to recover lands the State may rest on that presumption, until the defendant proves a divestment of her title.

2. COLLEGES AND UNIVERSITIES—TITLE TO PRORERTY.—In an action by the trustees of the State University who sued on behalf of the State to recover lands from a city, *held* that, in view of Act Dec. 19, 1801 (5 St. at Large, p. 403), Acts Dec. 18, 1802, Dec. 17, 1803, and Dec. 19, 1833 (5 St. at Large, pp. 437, 464, and 6 St. at Large, p. 485), as well as Acts March 1, 1870, Nov. 19, 1873, and March 22, 1878 (14 St. at Large, p. 388; 15 St. at Large, p. 484; 16 St. at Large, p. 532), the State, by the trustees of the State University, had title to the land in suit, and hence the question of defendant's title should not have been submitted to the jury.

3. TRIAL—PROVINCE OF COURT AND JURY—JURY QUESTION.—A question as to the authority conferred by statute is one of law, and should not be submitted to the jury.

4. COLLEGES AND UNIVERSITIES—LANDS—CONVEYANCES.—Under Act Nov. 19, 1873 (14 St. at Large, p. 388), creating commissioners of the sinking fund and giving them control of vacant lands, which declares that the act shall not be construed to authorize the sale by the commissioners of any property held in trust for a specific purpose by the State, does not authorize the commissioners of the sinking fund to convey lands held by the State for the use of the State University.

5. DEEDS—CONDITIONS—CONSTRUCTION.—Where land was conveyed to an incorporated fire company to occupy, use and enjoy the premises during the term of its corporate existence, to revert, in case the corporation should become extinct or forfeit its charter, the title to the land reverted to the grantor where the company became extinct and ceased to fight fires.

6. ADVERSE POSSESSION—PRESUMPTION OF GRANT.—Though Act March 22, 1878 (16 St. at Large, p. 532) forbade the granting of lands without the consent of the legislature, it will, after 20 years of adverse possession by the grantee, be presumed that the consent was given, though the statute be not produced.

7. MUNICIPAL CORPORATIONS—POWERS—LEGISLATURE.—A municipal corporation is a creature of the legislature, and has only such powers which the legislature has given it.

8. ADVERSE POSSESSION—PUBLIC PROPERTY.—While Civ. Code 1912, secs. 2945, 2958, authorize municipal corporations to purchase, hold and enjoy real estate, such corporations may only acquire and hold property according to the will of the legislature expressed by statute, and a municipality cannot, as against the State, acquire title to land by adverse possession to property being devoted to other State uses.

Before SMITH, J., Columbia, July, 1916. Reversed.

Action by the Trustees of the University of South Carolina against the City of Columbia. From a judgment for defendant, plaintiff appeals.

*Mr. H. N. Edmunds,* for appellant, submits: *State is real party in interest:* 77 S. C. 12; 221 U. S. 636; 35 L. R. A. (N. S.) 243. *Presumption of title:* 22 S. C. 50 and 484. *No reasonable ground to question State's title:* 99 S. C. 421; 104 S. C. 16. *No adverse possession:* 102 S. C. 395; 103 S. C. 460; 105 S. C. 329; 37 S. C. 334. *Municipality cannot claim adversely to parent State:* 22 S. C. 116; 20 S. C. L. (2 Hill) 575; 19 S. C. 412; 87 S. E. 521; 83 S. C. 88; 103 S. C. 10. *Control by State of municipal property:* 23 Stats. 553; 24 S. C. 1098; 27 Stats. 384; Acts 1914, p. 596.

*Messrs. Benet, Shand & McGowan,* for respondent, cite: *As to minutes in evidence:* 21 S. C. 66. *Adverse possession a question for jury:* 86 S. C. 290. *Effect of adverse possession:* 45 S. C. 312; 39 S. C. 11; 16 S. C. 141; 2 Rich. L. 22. *Municipality may assert adverse possession:* Ann. Cas. 1915c, 769; 4 Vt. 295.

October 11, 1917.

The opinion of the Court was delivered by MR. JUSTICE GAGE.

This action was brought in 1915, and is nominally by the South Carolina University against the city of Columbia, and is to recover the possession of an improved lot of land on the east side of Main street, south of the capitol and betwixt Pendleton and College streets. The locus is thus shown:

The sketch illustrates a city square of four acres, and the star indicates the situs in issue, being a part of No. 29. The sketch is taken from "The Commissioners' Map of the City of Columbia." That map does not indicate that lots 29 and 30 had been sold by the State; they, therefore, appear on the map as property of the State.

The Court submitted the cause to a jury, and a verdict was had for the defendant.

There are three exceptions by the plaintiff, and each is divided, and one is subdivided into many particular assignments of error, under the two general heads. But the exceptions make only two general questions: (1) Did the testimony require the direction of a verdict for the plaintiff? (2) Was the plea of the statute of limitations available to the defendant? And these two questions we shall consider after some reference is made to the history of the controversy.

The city of Columbia was authorized by the General Assembly in 1786 (4 Stat. at Large, p. 751). Under that statute five commissioners were elected by the legislature to execute the provisions of it. The commissioners were directed *inter alia* to secure and lay off a tract of land two miles square, at the present site of the city, and belonging then to the Taylors; and the title thereto was vested in the commissioners, with the power to sell lots. That act was

amended in 1792, so as to enlarge the commissioners' power to sell.   5 St. at Large, p. 215.

In 1801 the General Assembly established a college at Columbia.   5 Stat. at Large, p. 403.   The trustees of the college were thereby empowered to "make choice of any square or squares, yet unsold, in the town of Columbia, for the purpose of erecting said college."   By subsequent acts of the legislature, in 1802 and 1803, the commissioners were authorized to cancel bonds made to the commissioners by certain other purchasers of lots, and to convey such lots to the college.   5 St. at Large, pp. 437, 464.   And also certain other lots were subsequently, in 1833, granted directly by the State without the agency of the commissioners, and vested in the trustees of the college.   6 St. at Large, p. 485.

In 1870 the General Assembly enacted a statute "to provide for a sinking fund and the management of the same." 14 St. at Large, p. 388.   The managers of the sinking fund were styled "commissioners of the sinking fund," and they were thereby authorized and empowered "to sell and convey for and in behalf of the State all such real * * * property * * * belonging to the State as is not in actual public use;" but it was therein also provided, "this act shall not be construed to authorize the sale by the commissioners of any property held in trust for a specific purpose by the State." See Gen. Stats. 1882, secs. 60-64.   In November, 1873, the legislature passed an act by which the Enterprise Fire Engine Co. was chartered, and authorized it to purchase property.   15 St. at Large, p. 484.   In December, 1873, the sinking fund commissioners conveyed by deed the lot in issue to the Enterprise Fire Engine Co., and the company almost immediately erected a wooden house on the lot.   The deed to the Enterprise Fire Engine Company contains the following clause:

"In trust, nevertheless, to permit the said Enterprise Fire Company to occupy, use, and enjoy the said premises during the term of its corporate existence, and for no other purpose,

whatsoever; and in case the said corporation should at any time become extinct or forfeit its charter, then the said premises shall revert to the State of South Carolina, and be held by it as fully as if this conveyance had not been made."

In 1878 the legislature passed an act "to provide for the organization of the State University;" and therein, *inter alia*, it was written "that no sale of the property of the university shall be made without the *consent of the General Assembly.*"   16 St. at Large, p. 533.   (The italics are supplied.)

In 1892 the Enterprise Fire Engine Company "quit going to fires" (Chas. Narey and W. J. May, witnesses for the defendant); and was "disbanded" (Henry Dark, a witness for the plaintiff); "the property passed out of the hands of the Enterprise Company in 1893" (J. F. Walker, a witness for the defendant).

The fact is thus established that the Enterprise Fire Engine Company had "become extinct" in 1892 or 1893, and the parcel of land had passed out of its hands thenceforth.   After 1893 the house was occupied for some time by the Columbia Steam Fire Engine Company, a body chartered by the clerk of the Circuit Court, and then shortly by the city.   In 1902 the city of Columbia erected on the lot the present commodious brick house, and it has since been occupied by the fire force and apparatus of the city; so that the city is in *pedis possessio* of the lot and has been since 1892 or 1893.

It was contended by the plaintiff below and here that the instant action is by the State, and the Circuit Court so ruled. So much is manifest from the historical recital just made. But the defendant denies here that the action is by the State. It cannot, however, be denied that the State bought the land from the Taylors for a great public purpose, and took title to its own commissioners "for the use of this State."   See section 1, act 1786.   Nor can it be denied that the State has conveyed away parcels of land so bought, mediately through

its commissioners, and directly by legislative grant; nor can it be denied that the State authorized its college to make choice of any of the squares not yet sold in the town of Columbia for the purpose of erecting a college, and the college did in many proven instances make such choice; nor can it be denied that the State owns the college, directs it and supports it by taxes. These facts, before recited and resting in public records, constitute the State owner of the lands, and make the State the real party in interest.

It was conceded by the plaintiff below and here that the holding by the defendant has been for a period long enough, and under circumstances of such character, as to make out a title by adverse possession in the defendant, if the plea of adverse possession is available to the defendant. It was also, of course, conceded by the plaintiff that it must recover, if at all, on the strength of its own title, and not on the weakness of the defendant's title; and the plaintiff claims title since and before 1873, by virtue of the recitals hereinbefore made.

The answer pleads two defenses: (1) That the plaintiff had not been seized or possessed of the premises within 10 years before June, 1915 (the date of the commencement of the action), and the defendant had occupied the same in open, continuous, and hostile fashion for 20 years, and the plaintiff's action had not accrued within 20 years back from June, 1915 (Act 1870; sec. 120, Code Civ. Proc.); and (2) that the State being owner of the lot, and acting through the sinking fund commission, in December, 1873, sold the same to the Enterprise Fire Engine Company during the term of its corporate existence, and that the Enterprise Fire Engine Company turned over the premises to the Columbia Steam Fire Engine Company, and the city is successor in the trust under which the Enterprise Fire Engine Company acquired the lot. We direct our attention first to a consideration of the State's title.

The presumption of law, of course, is that the State at one time owned all the lands; and she may rest on that presumption until the defendant proves a divestment of her title. *State v. Pacific Guanoo Co.*, 22 S. C. 50.

But the unquestioned testimony is that the State again acquired the whole two square miles from the Taylors for great public purposes, for a capital city and for a college, and took deeds from the owners to its commissioners. The plaintiff, however, did not rest with this testimony, as well it might have done; but it undertook to fix its right by documentary evidence to the particular parcel of land described in the complaint and indicated on the sketch.

The great "Sherman fire" of the 60's consumed the Court records of Richland; and Richland was not the only county in the State to fall in the wake of that destructive agency. The plaintiff's proof, therefore, rested largely in plats, in minutes, and in some parol testimony.

The first paper title set up by the plaintiff and to be first considered are sundry plats. The sketch we made at the outstart is a section of one plat, and that plat is competent and is evidence of a very high character; it is a section, showing several blocks, out of the plat made by the commissioners appointed pursuant to the act of 1786, before referred to. The commissioners' plat shows that the lot in issue was then vacant; that is, the commissioners had not then sold it, but held it for the State. The Arthur and Moore plat, made in 1850, is next in time and authority. The testimony is clear to the integrity of that plat; there is none to the contrary; it denotes lots 29 and 30 as the property of the college, so that the college claimed to own the lot in 1850. The A. Y. Lee plat, made in 1869, was clearly proven to be competent; it denotes as college property the entire southern half of the sketched block, including the lot

in issue, and it denotes also the presence there of the obelisk testified to by Mr. Clark.

A witness, Mr. W. A. Clark, was a student at the college in 1860, and he testified that in 1860 the block of which the lot in issue is a part had only one building on it, and it was off the lot in issue, and the balance of the block was open; he testified that lot 32 was then marked by an obelisk put there by the college.   That portion of lot 29 situated on the corner of Main and College streets was confessedly conveyed by the trustees of the college to Manson about 1885. See 19 St. at Large, p. 191.   We omit any reference to the minutes of the trustees of the college, and those of the city council, offered in evidence by the university.

About the truth of the facts hereinbefore recited there is no sort of contest; they lead to only one reasonable and certain conclusion, and that is the plaintiff has now legal title to the specific lot in issue, unless the two aforementioned defenses have been so far proven as to require the submission of the case to a jury.   Considering these defenses in an inverse order, we come first to the defendant's claim of paper title in themselves.

The Court below submitted to the jury two issues springing thereout and relevant to the deed of 1873, to wit: (1) Whether the sinking fund commission had authority to make the deed; and (2) whether the Enterprise Fire Engine Company failed to occupy the premises, or whether it became extinct.

The first issue is one of law, and was not for the jury. The act which empowered the sinking fund commission to convey the State's lands has this provision in it: "This act shall not be construed to authorize the sale by the commission of any property held in trust for a specific purpose by the State."   14 St. at Large, p. 388.   The lot in issue, as we have held, was owned in 1873 by the State for the uses of the college; that was a "specific purpose," and the com-

missioners had, therefore, no authority to make the deed of 1873.

The second issue is one of law and fact, and there is no reasonable dispute about eitheir issue. The deed of 1873 contained the provision hereinbefore quoted. That clause is plain; the language needs no construction; and the law is if the Enterprise Fire Engine Company did cease its corporate existence and become extinct, then its right was lost. The testimony is all one way on the fact that the company ceased going to fires in 1892, and was disbanded then. Testimony of Narey and Dark. So that, in the first place, the sinking fund commission was without authority to make the deed of 1873; and, in the second place, the deed, if valid, was of no force on and after 1892 or 1893.

We are, therefore, of the opinion, that the plaintiff was entitled to a directed verdict because it proved a good legal title, and the defendant proved none, unless the defendant has so far established its plea of adverse possession as to warrant a submission of the cause to a jury.

And we come directly to the question whether the city may at all avail itself of that defense passing over several subordinate issues which would be vital if the instant action lay against other than a municipal corporation. But we ought to say this, that we do not agree with the appellant's contention that a deed from the commissioners to the city may not be presumed, because the act of 1878 prohibited the making of it except upon consent of the legislature, and there was no proof of such consent. After the lapse of 20 years of adverse continuous possession, the law presumes that such consent was given, whether the statute may be produced or not. *McCarty v. McCarty,* 33 S. C. L. (2 Strob.) 6, 47 Am. Dec. 585.

We are of the settled opinion that a municipality, under the circumstances of the case, may not plead against the State the statute of limitations prescribed by the Code, and

may not set up against the State an adverse holding as a fiction to presume a deed from the State. And this issue is independent of that before considered, to wit, whether the 20-year statute may generally be pleaded against a State. A municipal corporation, such as the defendant, is a creature of the legislature, and it has only those powers which the legislature has given it. See *White v. City,* 20 S. C. L. (2 Hill) 575; *Edgefield v. Georgia,* 104 S. C. 328, 88 S. E. 801. In that particular, it is true, the Constitution may limit the legislature itself; but no such question is made or arises in the instant case. Generally a municipal corporation may only acquire and hold property according to the will of the legislature expressed in the statutes. 3 Dillon, sec. 975. See Shaw, C. J., cited 1 Dillon, sec. 237.

The legislative will, as generally expressed, in this State permits a municipal corporation to purchase, hold and enjoy real estate. See Code of Laws, secs. 2945 and 2958. Counsel has cited no statute of the State enlarging Columbia's powers in that respect.

It may, however, be conceded that, as against a person, a city may acquire land by the adverse possession of it as well as by deed of it; but that is not the issue made by the instant case. Nor is the issue whether the State may take from a city the conceded property of the city; that would be a serious question, and that inquiry would be assuming the real question at issue.

The instant issue is, may a city take *pedis possessio* of its State's land, held by the State for its college, and, after holding the land for the city's own uses for 20 years, claim title to it against the State? A statement of the issue is an answer to it. The city governing is the State governing through the city in a circumscribed locality; and for a city to claim the property of the State adversely to the State is the same thing as to claim against itself, a manifest incon-

gruity. Such a holding cannot be adverse. We find no case in point, and none has been cited by counsel.

If the city has mistakenly expended her moneys in the construction of a building on the lot, the State has ample power and means, and, we assume, a disposition to compensate the city for the expenditure.

Our judgment is that the judgment of the Circuit Court be reversed, with direction to direct a verdict for the plaintiff.