17740

W. F. BYARS, Respondent, v. CHEROKEE COUNTY, Appellant
(118 S. E. (2d) 324)

*Harry L. Cline, Esq.,* of Gaffney, *for Appellant,*

*Wade S. Weatherford, Jr., Esq.,* of Gaffney, *for Respondent,*

January 30, 1961.

Moss, Justice.

In the Cherokee County Supply Act for the year 1945, approved March 14, 1945, 44 Stat. 745, there was appropriated the sum of $2,500.00 to build a potato curing house in Lower Morgan Township. The Act further provided that the amount appropriated for the construction of the potato curing house should be expended by the A. A. A. Committee for said County and such Committee was authorized to purchase or receive as a gift a site therefor; the title to said property to be taken in the name of Cherokee County. In the 1946 Supply Act for Cherokee County, approved March 15, 1946, 44 Stat. 1935, there was an additional appropriation of $672.52 to pay the balance due for the construction of such potato curing house.

It appears that pursuant to the foregoing authorization, a representative of the A. A. A. Committee of Cherokee County entered into negotiations with W. F. Byars, the respondent herein, for the purchase of a small tract of land containing .415 of an acre for the site of the potato curing house, and that an agreement was reached whereby the

respondent executed and delivered to Cherokee County, the appellant herein, a deed for the small tract of land for a consideration of $50, which said deed was dated August 17, 1945, and duly recorded in the office of the Clerk of Court for Cherokee County in Deed Book 2-Q, at page 198. This deed, pursuant to an agreement, contained the following proviso:

"Provided, that in case the said lot of land shall cease to be used by the County of Cherokee for curing house purposes that the said Forest Byars shall have the right to repurchase the said lot of land and have same reconveyed to him upon the payment of the said purchase price of $50.00, Cherokee County to have the right to remove therefrom at that time, any improvements placed on the said land if desired."

The record shows that the A. A. A. Committee of Cherokee County constructed upon this small lot of land a cement block potato curing house. This building was completed in November, 1945. The cost of construction was paid by Cherokee County from the appropriation made in the 1945 and 1946 Supply Acts. It is undisputed that the said lot of land and the building erected thereon ceased to be used by the County of Cherokee for curing house purposes in the spring of 1947. The respondent testified that it was then that he asked the county to reconvey the property to him as was provided in this deed of conveyance to the county.

It further appears that at a regular meeting of the Supervisor and the County Board of Commissioners held on September 5, 1950, a resolution was passed directing the sale of the potato curing house at public auction at 11:00 o'clock A. M. September 16, 1950. Pursuant to such authorization there was placed in the Gaffney Ledger the following advertisement:

"For Sale—Potato house in Macedonia Community to highest bidder on September 16, at 11:00 A. M."

It appears that at the appointed time the potato curing house was sold at public auction to one Claud Philips for the sum of $70.00. The sale was held in front of the potato curing house and the auction was conducted by the Clerk of the County Board of Commissioners of Cherokee County. The purchaser sold the potato curing house building to one Roy Byars and the respondent purchased the building from the said Roy Byars.

It further appears that at a meeting of the Supervisor and the County Board of Commissioners held on October 3, 1950, a resolution was unanimously adopted reciting that the appellant had purchased from the respondent, on August 17, 1945, the lot of land herein referred to, for the sum of $50.00, upon condition that should the county ever cease to use the same for potato curing house purposes, that it would reconvey the same to W. F. Byars for $50.00. The resolution further recited that the county had ceased to use the said lot for the purposes aforesaid and directed the County Supervisor and the Clerk of the Board to execute a deed conveying the said premises to the respondent, in compliance with the condition contained in said deed. Pursuant to, and in compliance with said resolution, the appellant did by deed dated October 3, 1950, and recorded in the office of the Clerk of Court for Cherokee County, in Deed Book 3-V, at page 466, reconvey the said small tract of land to the respondent, he having repaid the county $50.00, the original purchase price thereof.

The record shows that the respondent, from the time of the purchase of the potato curing house and the lot upon which it stood, used it continuously in his farming and orchard operations until October 9, 1957, at which time the State Highway Department condemned the said building and lot of land for highway purposes and made an award of $1,554.00 for the lot of land and building thereon. On October 29, 1957, the Comptroller General of South Carolina issued a check for the amount of the condemnation award payable jointly to the respondent and the appellant.

The respondent instituted this action against the appellant seeking to have the Court affirm his title to the potato curing house and the lot of land upon which it was located, and to adjudicate that he alone was entitled to the proceeds of the highway condemnation award. It is the position of the appellant that the County Board of Commissioners for Cherokee County had no authority to sell the potato curing house building or to execute a deed to the property in question, their acts in so doing being void and *ultra vires*. It is further asserted that the conduct of the respondent and the County Board of Commissioners constituted a fraud upon the taxpayers of Cherokee County.

The issues made by the pleadings were referred to the Honorable Leroy Moore, as Special Referee, to take the testimony and to report his conclusions of fact and law. After the trial of the case before the said Special Referee, he filed his report, recommending that the Court issue its order declaring that the respondent was the sole and absolute owner of the potato curing house and lot at the time of the condemnation thereof by the State Highway Department, and also finding that the respondent was entitled to the proceeds of the condemnation award. The appellant excepted to this report and the matter was heard before the Honorable Bruce Littlejohn, Resident Judge of the Seventh Circuit, who, by his decree, dated October 16, 1959, overruled all of the exceptions and affirmed the said report. This appeal followed.

The appellant alleges that the sale of the potato curing house by the County Board of Commissioners and the sale and reconveyance of the lot of land in question by the said Board was a fraud upon the taxpayers of Cherokee County. The appellant asserts that the respondent and the County Board of Commissioners knew, or should have known, that the said premises were to be included within the right-of-way of a new highway, and that by reason of such knowledge, the conveyance of the property to the respondent constituted a fraud. Fraud must be alleged

before one can have the advantage of a defense based thereon. *Marston v. Rivers et al.,* 138 S. C. 295, 136 S. E. 222. We will assume, for the purpose of this appeal, that the answer of the appellant sufficiently alleged fraud as a defense. However, fraud is never presumed and evidence of it must be clear, cogent and convincing. *Blackmon v. United Ins. Co.,* 235 S. C. 335, 111 S. E. (2d) 552. We find nothing in the evidence in this case from which fraud on the part of the respondent or the County Board of Commissioners might reasonably be inferred. When the respondent conveyed to the appellant the tract of land here involved, it was provided in such conveyance that should the appellant cease to use the said land for curing house purposes, then the respondent would have the right to repurchase the said lot of land and have the same reconveyed to him upon the payment of the purchase price of $50.00. When the respondent obtained a reconveyance of the property in question, in accordance with the condition stated in his deed to the appellant, he was acting within his legal rights. When the County Board of Commissioners of Cherokee County reconveyed the property to the respondent, it was acting in accordance with the condition contained in the deed under which the county obtained title to the property in question. Where one acts within his legal rights, fraud will not be presumed or implied. *Mishoe v. General Motors Acceptance Corporation,* 234 S. C. 182, 107 S. E. (2d) 43.

What is the proper construction of the deed from the respondent to the appellant, which conveyed the lot in question with the condition therein as is hereinabove set forth? In construing a deed, it is elementary that the cardinal rule of construction is to ascertain and effectuate the intention of the parties, unless that intention contravenes some well-settled rule of law or public policy. *Davis et al v. Davis et al.,* 223 S. C. 182, 75 S. E. (2d) 46; *Grainger et al. v. Hamilton et al.,* 228 S. C. 318, 90 S. E. (2d) 209.

The testimony shows that the respondent owned a farm in Cherokee County and a member of the A. A. A. Committee of Cherokee County approached him for the purpose of purchasing a small tract of land so that a potato curing house could be erected thereon. The respondent testified that it was agreed that if the county should cease to use the property for a potato curing house, then the repsondent would have the right to repurchase the property for the sum of $50.00. This agreement was incorporated in the deed. The respondent was the absolute owner of his land and he had the legal right to sell it under such conditions as he might impose in the deed. If the appellant did not wish to purchase the said tract of land with the condition imposed, it should not have consummated the purchase. The respondent in this case had the right to say in his deed that the property conveyed should be devoted to a particular purpose and that he should have the right to repurchase the same if it was not used for such purpose. It was the clear intent of the grantor to convey the lot of land in question to the appellant with the condition as is therein stated that he would have the right to repurchase the same if the appellant ceased to use the property for potato curing house purposes. No other intention can be reached from the language used. It was likewise the clear intention of the grantor that if the appellant ceased to use the property for a potato curing house, then the appellant would have a right to remove therefrom, at the time of the reconveyance of the land to the respondent, any improvements placed on the land, if the appellant so desired.

It is crystal clear that the appellant was purchasing the lot in question for the purpose of erecting thereon a potato curing house. It is equally clear that the respondent conveyed to the appellant the lot of land for such purpose, and attached thereto a reasonable condition that he would have the right to repurchase such lot of land if the appellant ceased to use the land for the purpose for which it was purchased. Since it is an admitted fact that appellant

had ceased to use the building upon the land for a potato curing house, the event which gave the respondent the right to repurchase the land had happened, and this contractual provision in the deed became operative. The appellant was bound to the performance of such. In the case of *White v. Brittin,* 75 S. C. 428, 56 S. E. 232, 234, it is said:

"* * * The right of a grantor to say in his deed that the property conveyed shall be devoted to a particular purpose and that it shall revert to his estate when not so used, should be fully recognized and protected, yet, as the law does not favor forfeitures, before the Courts will declare one, a breach of the conditions of the deed must be clearly proved."

In the case of *Trustees of University of South Carolina v. City of Columbia,* 108 S. C. 244, 93 S. E. 934, it was held that where land was conveyed to an incorporated Fire Company to occupy, use and enjoy the premises during the term of its corporate existence, to revert, in case the corporation should become extinct or forfeit its charter, title to the land reverted to the grantor when the company became extinct and ceased to fight fires.

In *Hammond v. Port Royal & Augusta Ry. Co.,* 15 S. C. 10, it was held that where a deed conveyed a strip of land to a railroad company, to them, their successors and assigns forever, "provided always, and this deed is upon the express condition" that a certain system of drainage was to be kept up by the railroad company, the Court held that this created a condition subsequent in the deed, and voidable by the grantor upon condition broken.

The condition stated in the deed in this case, giving the grantor by the express words used, the right to a reconveyance of the property should the appellant cease to use the land for curing house purposes, is a condition subsequent, and upon the happening of the event stated entitled the grantor to a reconveyance of the property. A condition subsequent is one annexed to an estate already vested, by the performance of which such estate is kept and continued, and by the

failure or nonperformance of which it is defeated; or it is a condition referring to a future event, upon the happening of which the obligation becomes no longer binding upon the other party, if he chooses to avail himself of the condition. Black's Law Dictionary, Third Edition, page 390.

The appellant earnestly argues that the case of *Williams et al. v. Wylie et al.,* 217 S. C. 247, 60 S. E. (2d) 586, 21 A. L. R. (2d) 717, is applicable and is authority for holding that the reconveyance made by the Supervisor and Board of County Commissioners to appellant was null and void. They assert that an enabling act is necessary to authorize the sale of county property. We do not think that the doctrine in the cited case is here applicable for the reason that the appellant obtained a deed on condition to the parcel of land when it was acquired. The county was bound by the condition in the deed that upon the discontinuance of the use of the property for potato curing purposes, respondent, under the terms of the conveyance, had the right to a reconveyance thereof.

The act of the Supervisor and the County Board of Commissioners reconveying to the respondent the tract of land in question was neither void nor *ultra vires.* It was the fulfillment and the performance of a condition stated in the deed by which the appellant obtained title to the property in question.

The trial Judge affirmed the holding of the Special Referee that the appellant had been guilty of laches and was now estopped to question the deed by which a reconveyance of the property was made by the appellant to the respondent. The testimony shows that on October 3, 1950, appellant reconveyed the lot in question to the respondent. The appellant has taken no action to question this deed or to have it set aside. The county also took positive action to dispose of the potato curing house located upon the premises before the reconveyance of the land and actually sold the building at public auction. The appellant asserts that the

building was not properly advertised because it was not stated where the sale would take place nor who the seller was. It is crystal clear from the record that the county took no legal action against the respondent concerning the re-conveyance of the property, or the sale of the potato curing house thereon, until the respondent brought this action. We think the doctrine of laches and equitable estoppel was available to the respondent against the position taken by the appellant.

In the case of *Powell v. Board of Commissioners of Police Insurance & Annuity Fund of State,* 210 S. C. 136, 41 S. E. (2d) 780, 782, 1 A. L. R. (2d) 330, it was held:

"But we think the case turns upon a narrower point. It is that respondent's right arises from contract, the original authority and binding force of which is unquestioned, and granting that it was the State itself which voluntarily entered the relationship as the other contracting party, it may be subject to the doctrine of estoppel in its contract relations. The rule is a well established one in American courts generally. 19 Am. Jur. 819; 49 Am. Jur. 298; 31 C. J. S., Estoppel, § 138, p. 403 *et seq.; State of Washington ex rel. Washington Paving Co. v. Clausen,* 90 Wash. 450, 156 P. 554, L. R. A. 1917A, 436. The following is from 31 C. J. S., Estoppel, § 140, p. 411, with numerous supporting citations in the footnotes: 'It has been broadly stated that there can be no estoppel against the United States or a state. Nevertheless, subject to limitations and exceptions * * * it is well established that in a "proper case" the doctrine of equitable estoppel may apply as against the federal and state governments, and that under circumstances which would estop a private individual an estoppel may be asserted against the United States, a state, or a state agency, commission, or officer'."

The case of the *State v. Simring et al.,* 230 S. C. 49, 94 S. E. (2d) 9, was an action by the State to estreat an appearance recognizance, and this Court had for decision the question of whether the State was estopped to assert that the

condition of the recognizance was breached. We held that the right of the State arose from contract and was, therefore, subject to the doctrine of estoppel.

Laches is the neglect for an unreasonable and unexplained length of time, under circumstances permitting diligence, to do what in law should have been done, or neglecting or omitting to do what in law should have been done for an unreasonable and unexplained length of time and in circumstances which afforded opportunity for diligence. *De Laine et al. v. De Laine et al.,* 211 S. C. 223, 44 S. E. (2d) 442. In order that the defense of laches may be sustained, the circumstances must have been such as to import that the complainant had abondoned or surrendered the claim or right which he now asserts. *Selden v. Kennedy,* 104 Va. 826, 52 S. E. 635, 4 L. R. A., N. S., 944.

We think that the lower Court properly, under the facts and circumstances here revealed, applied the doctrine of laches and equitable estoppeL It is an admitted fact that the use of the building upon the lot in question for potato curing purposes was abandoned in 1947. A witness for the appellant testified that it was not practical to remove the building from the land because it was constructed of concrete blocks. The County Board of Commissioners of the appellant took the initiative in disposing of the building by sale at public auction. If there was any defect in such sale because of failure to properly advertise the same, such was the fault of the appellant, and we think that the lower Court properly held that it was too late to question any irregularities in the sale of the building, particularly in view of the fact that the respondent had no part in disposing of the potato curing house building. We think that the facts as found by the Special Referee and affirmed by the Circuit Judge amply support the conclusion that the appellant is now barred by laches and equitable estoppel to repudiate the sale of the potato curing house building and the reconveyance of the land to the respondent.

The exception of the appellant is overruled and the judgment of the lower Court is affirmed.

STUKES, C. J., and TAYLOR, OXNER and LEGGE, JJ., concur.