## COLEMAN v. DUNLAP.

1. A holder of a note secured by a mortgage of indemnity, with a written assignment to him from the mortgagor endorsed on the mortgage, may not testify to his purchase of the note from the mortgagor, who at the time of trial is deceased, but may testify that he is the owner of the note; and this will be sufficient to sustain the action against the representative of the deceased.
2. This mortgagor was the endorser of the note, and at maturity had waived protest and paid off the note, and afterwards re-issued it. *Held*, under the proof, that the holder could recover from such endorser.
3. Notice of non-payment by the principal was probably rendered unnecessary by the taking for indemnity of a mortgage of property nearly equal in value to the amount of the debt.
4. If reasonable notice was necessary, a suit by the assignee for foreclosure of the mortgage, was demand upon the principal and constructive notice to the endorser.
5. The re-issue of the note for value after dishonor, without the endorsement erased, made the endorser liable as the drawer of a new bill, and demand upon the maker of the note and notice of non-payment were unnecessary.

---

Before COTHRAN, J., Laurens, June, 1882.

The opinion states the case. The Circuit decree was as follows:

I agree with the master in his findings of facts; also in his rulings upon section 415 of the code; also, that Dunlap, the endorser, upon taking up the note, was invested with the rights of the bank to enforce payment from Fuller, and that the transfer of the note by Dunlap to the plaintiff, for value, was a re-issue of it, with a revival of his liability as endorser.

I cannot, however, agree with the master, that it was necessary for the plaintiff to show that he had pursued the maker (James Fuller) to insolvency. R. S. Dunlap was not a guarantor of the note; his liability upon re-issuing the note was certainly as high as that of a surety, if, indeed, it did not become the unqualified liability of the maker of a new note; and in either event, the plaintiff had the right to demand payment of Dunlap alone, if he chose to do so. Dunlap, as has been already said, transferred the note to the plaintiff, after it was due, and for value, and by neglecting to erase his name from it, which he had the unquestionable right to do before parting with it, he gave to the note renewed currency, certainly with revived (and I am inclined to hold with unqualified) liability on his part.

What may have been the real intention of the parties in the matter of the transfer can never be known. Death has sealed the lips of the one, and the rule of evidence those of the other, and in this condition of things the true intention can be gathered only from the law itself which governs the naked and unexplained transaction. Written instruments importing an obligation must be construed most strictly against those who make them. R. S. Dunlap had the right to erase his name from the note. He neglected, it may be purposely declined, to do so. Its remaining there must bind him to the legitimate consequences of his neglect or refusal to erase it, and the most obvious consequence of his act is liability to make good the endorsement.

"It is a well established principle of commercial law, that if the last of several endorsers were to pay the note to his endorser, he could re-issue the note with or without his endorsement remaining upon it, and recovery could be had under this second transfer from all prior parties who remain liable to him, and from him also, if his endorsement were upon the instrument." 2 *Dan. Neg. Inst.*, § 1238. "If an endorser who pays a bill re-issues it, he is bound by his first or second endorsement according to intention; if as one already fixed, he need not have notice." *Id.*, § 1242. "If the acceptor retire a bill, he takes it out of circulation, the bill is paid; but if an endorser retire it, he only withdraws it from circulation so far as he is concerned." *Id.*, § 1243.

Wherefore it is ordered and adjudged, that the exceptions to the master's report be sustained; that the appeal to this court be dismissed; and that the decree of the trial justice be affirmed. It is further ordered, that the plaintiff have judgment for his costs against the defendant.

*Messrs. Ball & Watts*, for appellant.

*Mr. B. D. Cuningham*, contra.

March 6th, 1883. The opinion of the court was delivered by MR. JUSTICE McGOWAN. On May 22d, 1875, James Fuller made his promissory note for $125, payable to one R. S. Dunlap, at the bank of Newberry, five months after date. Dunlap endorsed the note in blank, and, upon receiving the note, the bank paid the money to Fuller, the maker, who, in order to secure Dunlap, his endorser, executed and delivered to him a chattel mortgage of a mule valued at $120. When the note fell due, October 25th following, Dunlap, waiving protest in writing over his signature, took up the note and some time afterwards formally assigned the mortgage of the mule to the plaintiff Coleman, and doubtless transferred to him at the same time for value the note, although there is no formal assignment upon it as on the mortgage. The mule was sold by the plaintiff under legal proceedings, and the proceeds applied as a credit on the note, which, with another payment, reduced the note to a small balance, for which he brought this suit before Trial Justice Watts against the administrator of Dunlap, who had died in the meantime.

The trial justice decreed for the plaintiff, and the defendant appealed to the Court of Common Pleas, and the matter was there referred to the master "to hear and determine the issues of law and fact involved," and he dismissed the complaint, saying: "There is no evidence that the balance due upon the note can not be made out of the maker and there is no evidence at all of demand upon him and non-payment and notice thereof to the endorser, which was necessary to make him or his estate liable to the plaintiff. It does not appear that this plaintiff has

made any effort whatever to collect the balance due upon the note from the maker. I think, therefore, and recommend that the case should be dismissed with judgment against the plaintiff for all costs of these proceedings," &c.

Exceptions were taken to this report and the Circuit judge reversed it and confirmed the judgment of the trial justice for the plaintiff. From this judgment the defendant appeals to this court upon two grounds :

"1. That his Honor erred in holding that the plaintiff was the owner of the note sued on. 2. That he erred in holding that the defendant's intestate was liable therefor."

The plaintiff had possession of the note as well as the mortgage, which latter had been regularly assigned to him by Dunlap, and which he enforced by having the mule sold, and crediting the proceeds upon the note. Coleman testified that he "was the owner of the note; bought it from R. S. Dunlap and paid him the money for it," &c. As Dunlap was dead at that time, it was not competent for Coleman to testify as to "transactions" had with him in his life-time, but we see no reason why he could not state that "he was the owner of the note," and that was all that was necessary to sustain the action, especially as he had possession of both the note and mortgage, which itself was *prima facie* evidence of ownership.

Being the owner of the note, having upon it the blank endorsement of Dunlap, with waiver of protest, is there any reason why Coleman cannot recover upon it against the administrator of Dunlap, the endorser, from whom he received it, without exhausting James Fuller, the maker of the note? When delivered to Coleman, the obligation was either on the old note endorsed by Dunlap with waiver of protest, or on a new bill drawn by him in favor of Coleman, and in either case we think that the holder could recover the balance of the note from the estate of Dunlap, upon the proof made.

In the view that Dunlap still remained endorser after he paid the bank and re-issued the note, he was the endorser of a note past due for value. Notice of protest was expressly waived in writing, on the paper itself, but if that could not refer to the revived liability made after the paper was due, all the notice that

Dunlap could require was reasonable notice of non-payment, and probably even that was rendered unnecessary by his taking a mortgage, for his indemnity from the maker, of property nearly equal in value to the amount of the debt. See *Barrett* v. *Charleston Bank*, 2 *McM.* 194, where Judge Evans, in speaking for the court, says: "It seems to me that Barrett, having taken what he considered ample security against his liability on his endorsement, and in the absence of any proof to the contrary, we must suppose it an ample security, has waived his right to insist on notice of non-payment by the maker," &c.

But if there was no waiver as to the balance of the debt, which remained after the proceeds arising from the sale of the mule was applied, the assignment of that mortgage to the plaintiff, and his suing the maker, Fuller, to foreclose the mortgage, was at least constructive notice of non-payment. "In the case of negotiable notes transferred after due and guaranteed by the endorser, demand of payment from the maker and notice to the endorser, either actual or constructive, within a reasonable time, must be proved. The bringing of suit on the note against the maker, is a sufficient demand, and, if known to the endorser, would be sufficient notice." *Benton* v. *Gibson*, 1 *Hill* 56.

But we incline to the view that the circumstances make this one of the cases in which the endorser is held to be the drawer of a new bill, and that demand upon the maker and notice of non-payment to the endorser were not necessary. The endorser took up the note from the bank and re-issued it for value. He might have stricken out his own name on the back, but he did not do so, and he probably left it there to give the note value. "It is a well established principle of commercial law, that if the last of several endorsers were to pay the note to his endorser, he could re-issue the note with or without his endorsement remaining upon it, and recovery could be had under this second transfer from all prior parties who remain liable to him, and from him also if his endorsement were upon the instrument." 2 *Dan. Neg. Inst.*, § 1238.

It was said by Judge O'Neall, in the case of *Gray* v. *Bell*, 3 *Rich.* 72: "According to our cases of *Eccles* v. *Ballard*, 2 *McCord* 388; *Barratt* v. *May*, 2 *Bail.* 1; *Benton* v. *Gibson*, 1

*Hill* 56, the endorser of a note after due is to be regarded either as the guarantor of its payment or as the drawer of a new bill. Both stand upon the same principles, and it is hardly necessary to distinguish in what precise character he is to be charged. I am prepared, however, to go much farther and to hold that the endorser of a note negotiable after due, is to be regarded either as a new maker, or as the drawer of a bill on a man without funds (the maker who has failed to pay), in neither of which cases is demand of payment or notice at all necessary."

The judgment of this court is that the judgment of the Circuit Court be affirmed.