10371

MIDDLETON *ET AL.* v. COCKFIELD *ET AL.*

(102 S. E. 328.)

1. ESTOPPEL—MORTGAGEE WHO ACCEPTED NEW INDORSED NOTE AND
   MORTGAGE AND ASSIGNED ORIGINAL NOTE AND MORTGAGE TO INDORSEE
   ESTOPPED FROM DENYING VALIDITY OF SAME WHEN ASSIGNED BY
   INDORSEE.—Under the rule that, where one of two innocent per-
   sons must suffer loss, it must be borne by the one who by his con-
   dust has made the injury possible, a bank holding a mortgage
   and note already due which accepted a new mortgage and note
   on the latter being indorsed by a third person to whom was
   assigned the original note and mortgage cannot attack the validity
   of the original note and mortgage in the hands of plaintiff, a *bona fide*
   purchaser, even though the transfer was made after maturity; the
   mode of assignment being such as would naturally lead plaintiff to
   believe that the original note and mortgage was still enforceable.

2. MORTGAGES—PRIORITY OF RIGHTS OF ASSIGNEE OF FIRST MORTGAGE
   OVER ORIGINAL MORTGAGEE WHO ACCEPTED RENEWAL MORTGAGE
   AND ASSIGNED ORIGINAL NOTE AVOIDED ON GROUND MORTGAGOR WOULD
   PAY TWICE.—Where plaintiff acquired a mortgage and note which
   original mortgagee assigned when it accepted a new note and mort-
   gage on renewal, *held,* that plaintiff's right to priority against the
   original mortgagee will not be denied on the ground that the mort-
   gagor might be compelled to pay the same debt twice.

.. MORTGAGES—RULE THAT ONE BUYING NONNEGOTIABLE SECURITY
   TAKES IT SUBJECT TO EQUITIES DOES NOT APPLY WHERE THE ORIGI-
   NAL PARTIES HAVE ESTOPPED THEMSELVES TO ASSERT SUCH EQUITIES.—
   The rule that one buying a nonnegotiable security, such as a mort-
   gage, takes it subject to all equities existing between the original
   parties, is inapplicable where the original parties have by their con-
   duct, acts, or omissions estopped themselves from asserting existence
   of such equities.

Before SEASE, J., Williamsburg, —— term. ——. Af-
firmed.

Action by C. F. Middleton and others, copartners trading
as Middleton & Co., against J. A. Cockfield and the Home
Fertilizer & Chemical Company and the Farmers & Mer-
chants National Bank of Lake City. From a judgment for
plaintiffs, the last named defendants appeal.

*Messrs. Arrowsmith, Muldrow, Bridges & Hicks,* for appellants, cite: *As to competency of testimony:* 92 S. C. 501; 71 S. C. 250. *As to payment of mortgage:* 27 Cyc. 1885; 35 S. C. 398. *As to effect of assignment:* 103 S. C. 227; 27 Cyc. 1436; 20 S. C. 381; 7 Rich. 400, 406. *As to effect of reassignment:* 100 S. C., p. 28; 6 S. C. 159; 38 S. C., pp. 148-152; 43 S. C. 287; 45 S. C. 86. *Is the bank estopped?* 97 S. C. 129; 49 S. C. 477; 43 S. C. 288; 45 S. C. 83; 57 S. C. 480; 38 S. C. 138; 43 S. C. 287; 45 S. C. 83; 49 S. C. 469.

*Messrs. Stoll, Stoll & O'Bryan* and *H. W. Conner,* for respondents. *Messrs. Stoll & O'Bryan* cite: *As to transaction with the deceased assignee:* 47 S. C. 488; 57 S. C. 481. *As to written instruments—contradicting by parol testimony:* 13 S. C. 338; 56 S. C. 558; 54 S. C. 128; 57 S. C. 60; 108 S. C. 47.

January 27, 1920.

The opinion of the Court was delivered by MR. JUSTICE HYDRICK.

This action was brought to foreclose a mortgage of real estate, dated January 16, 1913, and given by J. A. Cockfield to Farmers & Merchants Bank to secure his note for $1,090.76.

On November 2, 1914, J. A. Cockfield conveyed the land to H. W. Cockfield, subject to the mortgage to the bank, payment of which was assumed by H. W. Cockfield.

On November 3, 1914, H. W. Cockfield mortgaged the land to S. R. Cockfield to secure his note for $2,500 which was assigned before maturity to Home Fertilizer & Chemical Company.

On February 2, 1915, the defendant, Farmers & Merchants National Bank (successor to Farmers & Merchants Bank), assigned the J. A. Cockfield note and mortgage to S.

R. Cockfield, under the following circumstances: The bank having demanded payment thereof, it was arranged by the payment of $223.03 in cash and the giving of a new note for $901.03 which was signed by H. W. Cockfield, and indorsed by S. R. Cockfield and Mrs. F. C. Cockfield. This was done through S. R. Cockfield, who carried the money and new note to the bank and negotiated the business.

Instead of marking the J. A. Cockfield note and mortgage paid, or crediting the cash payment made thereon, the bank assigned them to S. R. Cockfield for the sole purpose, as testified by the cashier, of securing him and Mrs. F. C. Cockfield against loss by reason of their indorsement of H. W. Cockfield's note, which has not been paid, and upon which there is still due about $800. But no payment was ever made thereon by either of the indorsers.

The assignment, however, did not express the agreement above stated, but was as follows:

"For and in consideration of the sum named in the within paper we do hereby transfer, set over and assign all our rights, title, and interest in the within note and mortgage to S. R. Cockfield, his heirs and assigns forever, without recourse to or on us."

On February 26, 1916, S. R. Cockfield assigned said note and mortgage, which were then past due, to plaintiffs as collateral to secure them for advances which were to be made and were made to him during the year 1916. Plaintiffs knew nothing of the agreement above stated under which the note and mortgage had been assigned to S. R. Cockfield by the bank, but took them in good faith, in reliance upon the form of the bank's assignment of them to him, and his statement to them that he was the absolute owner thereof, and that the full amount thereof was due to him, and plaintiffs had no notice of the agreement until after they had made the advances.

In the meantime, on December 31, 1915, H. W. Cockfield mortgaged the land to S. R. Cockfield to secure his note for $1,831.84, which was assigned before maturity to the bank.

On January 17, 1917, M. B. Joye (presumably the grantee of H. W. Cockfield) mortgaged the land to S. R. Cockfield to secure his note for $5,000, which was assigned at once to the bank.

Appellants contended that the note and mortgage sued on were paid before their assignment to plaintiffs, and, having been assigned to plaintiffs after maturity, they took them subject to the equities existing between the original parties; and plaintiffs contended that by its unqualified assignment of them to S. R. Cockfield, by which he was allowed to hold himself out as the absolute owner thereof for the full amount due thereon, the bank is estopped from asserting the contrary.

We agree with the Circuit Court in sustaining the plaintiffs' contention. The rule in equity is that, where one of two innocent persons must suffer a loss, it must be borne by the one who, by his conduct, acts, or omissions, has made the injury possible. This rule as stated by Pomeroy was quoted and approved in *Chambers v. Bookman,* 67 S. C. 432, 451, 46 S. E. 39. By the form of its assignment to S. R. Cockfield the bank made it possible for him to commit a fraud upon plaintiffs, unless the bank is now held to be estopped to deny that the assignment spoke the truth, and it follows the bank should suffer the loss.

The words "for and in consideration of the sum named in the within paper" were calculated to mislead plaintiffs into the belief that S. R. Cockfield had paid to the bank the amount due on the note and mortgage and was entitled to hold the same as securities therefor. By its form the necessary implication of the assignment was that the note and mortgage were valid subsisting securities for the amount

due thereon, and that the bank had good title thereto and the right to give its assignee such a title. *Wait v. Williams*, 107 S. C. 32, 91 S. E. 969.

It is contended on behalf of H. W. Cockfield, though he is in default, and admitted to be insolvent, that to sustain the plaintiffs' contention would cause him to have to pay the same debt twice. That does not necessarily follow. But we are not called upon to decide that issue, or any issue that may arise between H. W. Cockfield and the bank, as to his liability to pay the note which the bank holds against him. The issue here is between the plaintiffs and the bank.

The principle relied upon by appellants that one who buys a nonnegotiable security takes it subject to all equities existing between the original parties is sound, but inapplicable where such original parties have, by their conduct, acts, or omissions, estopped themselves from asserting the existence of such equities. There is no conflict between the two rules.

Appellants' argument is predicated upon the assumption that plaintiffs are not entitled to the protection of *bona fide* purchasers for value without notice within the equity rule, because they took the note and mortgage as security for the payment of a pre-existing debt. But, as hereinbefore stated, the evidence satisfies us, as it did the Circuit Court, that the note and mortgage were not taken to secure a pre-existing debt, but to secure the payment of advances to be made and actually made during the year 1916, before plaintiffs had any notice of the defect in their assignor's title.

Judgment affirmed.