### MARSTON v. RIVERS *ET AL.*

#### (136 S. E., 222)

1. MORTGAGES—EVIDENCE OF FRAUD VITIATING ALLEGED TRANSFER OF BOND AND MORTGAGE HELD ADMISSSBLE, UNDER PLEADING DENYING TRANSFER.—In suit to foreclose mortgage securing payment of bond, alleged to have been transferred to plaintiff by original payee and mortgagee before maturity, defendant's denial that there had been a transfer of the papers to plaintiff *held* sufficient to warrant receipt of evidence showing that transfer was fraudulent, and hence no real transfer.

2. FRAUD—FRAUD MUST BE ALLEGED, TO BE AVAILABLE AS DEFENSE.— Generally, fraud must be alleged before one may have the advantage of a defense of that nature.

3. MORTGAGES—FRAUD IN EXECUTION OF MORTGAGE AND BOND SHOULD BE ALLEGED, IF RELIED ON AS DEFENSE.—In suit to foreclose mortgage securing bond, fraud in the execution of such instruments should be alleged, to be available as defense.

4. PRINCIPAL AND AGENT—FRAUD OF AGENT, IN PROCURING BOND AND MORTGAGE FOR PRINCIPAL, IS CHARGEABLE TO PRINCIPAL.—Purchaser of bond and mortgage through agent is chargeable with fraud of the agent, in securing the papers for his benefit.

5. BONDS—WHERE PARTIES HAVE INTENDED INSTRUMENT AS BOND, COURT WILL NOT CONSTRUE IT OTHERWISE FOR BENEFIT OF ONE OF THEM.—Where all parties to written instrument intended that it should be regarded and construed as bond, it would be inequitable and unjust for the Court to thereafter change the character of the instrument for the benefit of one of the parties.

6. BILLS AND NOTES—FRAUD IN TRANSFEREE'S PROCUREMENT OF NOTE WILL VITIATE HIS TITLE THERETO (NEGOTIABLE INSTRUMENTS ACT [CIV. CODE 1922, § 3706]).—In view of Negotiable Instruments Act (Civ. Code 1922, § 3706), fraud in transferee's procurement of promissory note will vitiate title thereto, even though it was acquired before maturity.

7. PRINCIPAL AND AGENT—PAYEE OF BOND AND MORTGAGEE HELD AGENT
OF TRANSFEREE FOR COLLECTION.—Payee of bond and mortgagee of
real estate to secure it *held* agent of plaintiff transferee for collec-
tion of mortgage debt such that payment to it precluded recovery
by plaintiff.

Before TOWNSEND, J., Richland, November, 1924. Af-
firmed.

Foreclosure suit by W. W. Marston against J. F. Rivers
and another. From decree for defendants, plaintiff appeals.

The decree of Judge Townsend was as follows:

"This cause was heard by me upon exceptions to the mas-
ter's report. I find from the evidence that C. H. Barron,
who later became president of the Carolina Bond & Mort-
gage Company, and also senior member of a law firm, in
1914 met plaintiff, a resident of Virginia, and soon there-
after became, and was during the period now in question,
personally plaintiff's agent for the purpose of investing his
funds (aggregating some $15,000) in this state, collecting
both interest and principal thereon. Plaintiff testifies that
the collection of principal was only after satisfaction papers
had been executed by him. I find that in one case, at least, a
loan to C. N. English (see Barron's letter, April 26, 1916)
the funds were both collected and reinvested before such
papers were sent. Barron paid plaintiff interest on such
principal after its collection by him until reinvested by him,
and they sometimes remained uninvested for months. On
December 26, 1918, Barron requested plaintiff to let him
have $4,500 which plaintiff sent him the next month for in-
vestment. It does not appear to have been invested before the
following fall. On November 6, 1919, plaintiff visited Co-
lumbia, and left a note for Barron in evidence, calling upon
him to send him by the last of the following week 'the pa-
pers for the $4,500 loans.' On November 12, 1919, Barron
sent plaintiff by mail bonds and mortgages including that
for $1,200 sued on in this action, aggregating $4,000, as-
signed to plaintiff by Barron, as president of the Carolina

Bond & Mortgage Company, his signature being attested by Mr. Prioleau, as secretary.

"It does not appear that the directors of the company knew of the transaction. Plaintiff testifies he had no transactions with the Carolina Bond & Mortgage Company. Mr. Prioleau, its secretary and treasurer, says he had none with plaintiff, except through Mr. Barron; that he delivered the assigned papers to Barron, expecting Barron to collect for them from plaintiff; and that, inasmuch as the company received nothing for the assignment from either Barron or plaintiff, he as treasurer of the company collected both the interest and principal from the defendant mortgagor. Mr. Prioleau testifies that over a year after he turned over the papers, the latter informed him that he had collected the money from plaintiff and used it.

"I both find and conclude that in obtaining the assignment of the bond and mortgage from the Carolina Bond & Mortgage Company Barron acted in the scope of his duty as an investing agent for the plaintiff, and fraudulently undertook to transfer the property of the Carolina Bond & Mortgage Company, in the assigned papers, to the plaintiff in satisfaction of his personal obligation for funds which had been therefore placed by plaintiff in his hands for investment. That this fraud on the part of Barron renders the transfer a nullity as against the defendants in this action, who, in good faith, and without notice of the assignment or of the claims of plaintiff, paid the full amount due upon the bond and mortgage in question to the Carolina Bond & Mortgage Company. *Hall v. Erwin,* 60 Barb. (N. Y.), 349; *Matteson v. Morris,* 40 Mich., 52; *Getzlaff v. Seliger,* 43 Wis., 297.

"Because of my findings and conclusions above stated, I sustain subdivisions (a), (b), (c), (f), and (g) of the first exception of the Standard Building & Loan Association and of the eighth exception of Rivers, and so much of subdivision (d) in both of said exceptions, and of the seventh

exception of the Building & Loan Association as refers to the agency of Barron for the plaintiff, and the seventh exception of Rivers, and the second, fifth, and sixth exceptions of the Building & Loan Association to the Master's Report.

"Under my findings and conclusions as above set forth, it is unnecessary for me to consider or pass upon the other questions raised in the exceptions to the master's report.

"It is therefore ordered, adjudged, and decreed that the complaint be dismissed, and judgment entered in favor of the defendants."

*Messrs. Melton & Belser,* for appellant, cite: *Denial of indorsements on paper by plea of "no knowledge or information" is overcome by production of paper with indorsements:* 120 S. C., 375; 110 S. C., 353; 110 S. C., 268; 103 S. C., 538; 102 S. C., 52; 97 S. C., 148; 38 S. C., 385; 17 S. E., 138; 18 S. C., 594; 81 S. E., 644; Brannon on Neg. Inst., 516; 1 Dan. Neg. Inst., 812; 2 Dan. Neg. Inst., 118. *Where fraud is defense, facts constituting fraud must be pleaded:* 103 S. C., 340; 101 S. C., 144; 27 S. C., 62; 21 R. C. L., 531 and 570; Pom. Code Remedies, 92 and 789. *Facts constituting a defense cannot be taken advantage of if not pleaded:* 3 Dall., 89; 1 L. Ed., 522; 1 Fla., 10; 44 Am. Dec., 621; 191 N. Y., 101; 83 N. E., 586; 14 Ann. Cas., 414; 17 L. R. A. (N. S.), 641; 25 N. D., 165; 141 N. W., 501; 47 L. R. A. (N. S.), 853; Brannon Neg. Inst., 534; 21 R. C. L., 570. *Papers from file in office of deceased person inadmissible without further proof:* Jones on Ev., 583 and 788. *Burden on party asserting agency to prove it:* 237 Mo., 425; Ann. Cas., 1913-A, 183; 221 Pa. St., 529; 15 Ann. Cas., 641. *Authority to make loans and collect interest is not authority to collect principal:* 128 S. C., 417; 23 L. R. A. (N. S.), 418; 127 S. E., 562; 21 R. C. L., 868; 21 L. R. A. (N. S.), 53; Jones on Mortgages, 538 and 556. *Officers of mortgage company have authority to transfer and indorse bonds and mortgages:* 89 S. E., 587; 7 R. C. L.,

620 and 643; 1 Dan. on Neg. Inst., Sec. 392. *Company may ratify acts of officer:* 103 S. C., 494; 1 Dan. on Neg. Inst., 394; 7 R. C. L., 623. *Obligor on bond not entitled to notice of assignment:* 113 S. C., 140. *Payments made on bond to one not having possession of paper made at risk of payor:* 128 S. C., 417; 115 S. C., 17; 113 S. C., 282; 97 S. C., 453; 67 S. C., 585; 57 S. C., 464; 15 S. C., 171; 21 R. C. L., 868; L. R. A., 1916-B, 860; 21 L. R. A. (N. S.), 52; 23 L. R. A. (N. S.), 414 Jones on Mortgages, Secs. 956 and 964; 1 Dan. on Neg. Inst., 391; 2 Dan. on Neg. Inst., 1388. *Payment to mortgagee after notice of assignment does not discharge debt:* 127 S. E., 562; Code Civ. Pro., 1922, Sec. 355; 2 Pom. Eq., Sec. 704. *Mortgagor may not question consideration between subsequent transferer and transferee:* 3 R. C. L., 105; 1 Dan. on Neg. Inst., 815. *Bonafide holder of note not affected by fraud between prior parties not vitiating note:* 4 A. & E. Enc. of Law, 325 and 326. *Agency cannot exist without knowledge of principal:* 72 S. C., 251; 68 S. C., 363; 21 R. C. L., 821. *Where corporation is agent, officers thereof are not agents in individual capacity:* 1 McM., 453; 1 A. & E. Enc. of Law, 972 and 978. *Cases distinguished:* 50 Barb. (N. Y.), 349; 40 Mich., 52; 43 Wis., 297.

*Mr. Edward L. Craig,* for respondent, J. F. Rivers.

*Messrs. Thomas & Lumpkin,* for respondent, Standard Building & Loan Association, cite: *Bond and mortgage in suit non-negotiable:* 134 S. E., 252; 131 S. E., 601. *Papers from file of deceased person admissible if their character and purport can be proved by witnesses:* 75 S. C., 334. *Defendant estopped to deny agency to collect principal of bond:* 134 S. E., 252.

December 30, 1927.

The opinion of the Court was delivered by MR. JUSTICE BLEASE.

The plaintiff instituted suit in the Court of Common

Pleas for Richland County for foreclosure.  He alleged
that he was the owner of a certain written instrument,
designated· a "first mortgage bond," and a mortgage of
real estate executed to secure the payment thereof, made
by the defendant, Rivers, to Carolina Bond & Mortgage
Company, which, before maturity, were indorsed and trans-
ferred to the plaintiff by the original payee and mortgagee.
Standard Building & Loan Association was made a party
defendant on the theory that it held a mortgage junior to
that of the plaintiff .

In their respective answers, the defendants denied the
title of the plaintiff to the written instruments sued upon,
and they also alleged that the mortgage debt had been paid
in full, claiming that payment thereof had been made to
Carolina Bond & Mortgage Compny as the agent of the
plaintiff.

The Master found in favor of the plaintiff and recom-
mended judgment for the full amount claimed by him and
the foreclosure of the mortgage.  Upon exception being
taken to the report, Hon. W. H. Townsend, Circuit Judge,
reversed the Master's findings and dismissed the complaint
of the plaintiff.  The decree of Judge Townsend will be re-
ported.  The plaintiff has appealed to this Court on 27
exceptions, but, in our opinion, there are only two real
issues in the cause.

By reference to the decree of Judge Townsend, it
will be seen that he concluded that the late C. H.
Barron, Esq., who was president of Carolina Bond
& Mortgage Company, was the agent of the plaintiff for
the investment of funds of plaintiff in this State; and that
Mr. Barron fraudulently attempted to transfer the papers
executed by Rivers to Carolina Bond & Mortgage Company
to his principal, the plaintiff; and, therefore, the plaintiff
did not have title to the written instruments sued upon.
The plaintiff contends that there was no claim of fraud set
up by either of the defendants, and that, accordingly, there

was error on the part of the Circuit Judge in his findings as to fraud, and that the Judge went out of the record to make such findings.

It is true that, generally, fraud must be alleged 2, 3 before one may have the advantage of a defense of that nature. Undoubtedly, if the defendants had sought to establish fraud in the execution of the written instruments, such fraud should have been alleged. There is no plea that the papers were procured by fraud, and the Circuit Judge has not so found. To the contrary, it appears absolutely that the papers were executed by Rivers to Carolina Bond & Mortgage Company honestly and fairly. But the plaintiff alleged ownership of the papers, and this ownership was denied by both defendants. This being true, it was incumbent upon the plaintiff to establish his ownership. If title to the instruments was secured by fraud, the plaintiff was not the legal owner and had no right to recover thereon.

Although innocent himself, if his duly constituted 4 agent was guilty of fraud in securing the papers for his benefit, the plaintiff was bound by the fraudulent act of his agent. There was sufficient evidence to sustain the findings as to fraud on the part of the plaintiff's agent, Barron. The defendant's denied that there had been a transfer of the papers to the plaintiff, as alleged by the plaintiff. That denial was sufficient to bring out the fact that the transfer was fraudulent, since if it was fraudulent, there was no real transfer. The plaintiff who seeks equitable relief in a Court of Equity must come to that Court with clean hands. We think that the denial in the answers of the defendants, as to the plaintiff's ownership of the papers, was sufficient to allow the introduction of evidence going to show defect in the plaintiff's title.

The plaintiff also contends that the written instru- 5 ment, which is styled a "first mortgage bond," is not really a bond, but that it is a negotiable promissory

note, and that, when the plaintiff purchased it before maturity, he had it free of any equities between the defendant, Rivers, and the original payee, Carolina Bond & Mortgage Company. Judge Townsend did not pass upon the question as to the character of this instrument. Under his conclusions, it was not necessary for him to determine that question. The paper bears many characteristics of a negotiable promissory note, but all through the instrument it is referred to as a "bond," and it is evident that it was considered bond by the maker, the original payee, and the plaintiff, as assignee. The assignment, which the plaintiff took, refers to the paper as a "bond." When it is well established that all parties to a written instrument intend that it should be regarded and construed as a bond, it would be inequitable and unjust for the Court to thereafter change the character of the instrument for the benefit of one of the parties.

But even if the instrument should be regarded as a promissory note and not a bond, we fail to see how the plaintiff could be benefitted, although the papers came into his hands before maturity, for the reason that fraud would vitiate the title to a negotiable instrument just as readily as it would make void title to a nonnegotiable instrument. This principle of law is elementary; and we think it is confirmed by Section 3706 of Civ. Code 1922, the Negotiable instruments Act.

In addition to the reasons given by Judge Townsend for his conclusion that the plaintiff's complaint should be dismissed, it is our opinion that this result should have been obtained for another reason. In our opinion, the contention of the defendants that Carolina Bond & Mortgage Company was the agent of the plaintiff for the collection of the mortgage debt should have been sustained; and there is no doubt as to that company having received full payment of the debt. Unfortunately for the plaintiff, he, like so many others, trusted Mr. Barron and the Carolina Bond & Mortgage Company, of which he was president, too

far, and he was negligent in his duty to the defendant, Rivers. It may be hard for the plaintiff to lose the money he intrusted to Mr. Barron, but it would be harder still for the defendants to have to reimburse him for his loss. The plaintiff cannot, legally or morally, hold the defendants for his own negligence.

Under all the circumstances of the case, justice and equity demand that the decree of Judge Townsend be affirmed, and it is so ordered.

MESSRS. JUSTICES WATTS and STABLER and MR. ACTING ASSOCIATE JUSTICE C. J. RAMAGE concur.

MR. JUSTICE COTHRAN dissents.

MR. JUSTICE COTHRAN: I dissent from the conclusions reached in this appeal by Mr. Justice Blease upon the grounds which follow.

This is an action to foreclose a mortgage executed by the defendant, Rivers, to the Carolina Bond & Mortgage Company (hereinafter referred to as "the company"), securing a note for $1,200.00, dated July 7, 1919, due July 1, 1922, with interest from date at 8 per cent. per annum, alleged to have been assigned for value to the plaintiff, Marston, on November 12, 1919, before its maturity.

The complaint is in the usual form, alleging the execution and delivery of the note and mortgage and its assignment to the plaintiff. The answers of the defendants admitted the execution of the note and mortgage, denied knowledge or information as to the alleged assignment, and pleaded payment to the company, as agent for the plaintiff.

The case was referred to the Master to hear and determine all issues. He filed a report holding that Marston was the owner and holder for value of the note and mortgage; that he had not constituted the company or any other person his agent to receive payment; that the mortgage had not been paid; and recommended foreclosure for the full amount claimed.

Upon exceptions to the Master's report, the Circuit Judge, his Honor, Judge Townsend, held substantially that the assignment to Marston was void because of fraud on the part of Barron, the president of the company, as the investing agent for Marston, in assigning the note and mortgage to him, and that the payment to the company discharged the debt and the security, dismissing the complaint. (It will be observed, in passing, that the complaint is based upon the theory that the payment was made by Rivers to the company, as the agent of Marston; while the decree is based upon the theory that the assignment was void for fraud; that, consequently, the title never passed out of the company; and that the payment, being made to the true owner of the obligation, effected a discharge of the debt and the security; entirely different theories.)

From the decree, the plaintiff has appealed.

The facts of the case are as follows:

On the 7th of July, 1919, the defendant, Rivers, borrowed from the company $1,200.00, and executed the obligation hereinbefore described. The semiannual installments of interest were paid by Rivers to the company up to January 1, 1922; they were not remitted by the company to Marston, but were deposited to the credit of the company, and the amounts were remitted to Marston by personal checks of the law firm of which Barron was a member, presumably credited to that firm on the books of the company.

On May 30, 1922, a month before the note was due (July 1, 1922) the company wrote Rivers:

"On July 1, 1922, you will be due us in the above loan $1,200 on the principal, $48 interest, total $1,248. This loan has been sold and the present holder of the mortgage expects that the amount due be in hand on the date named, and we will appreciate it if you will allow us to have remittance to cover in Columbia or Northern funds by the 28th prox. instant."

On June 12, 1922, the defendant Rivers, preparing to

comply with the demand contained in the company's letter of
May 30th, negotiated a loan with the defendant Standard
Building & Loan Association, for $800, and at the same
time delivered to its attorneys, Thomas & Lumpkin, his
check for $477.50. The proceeds of the loan of $800, less
certain expenses, plus the check of $477.50, was sufficient to
pay off the $1,200 mortgage with interest from January 1,
1922, to July 19, 1922, $1,253.26 (with the exception of a
small deficiency, $5.26, which Thomas & Lumpkin billed to
Rivers).

On July 19, 1922, Thomas & Lumpkin delivered to Prio-
leau, secretary treasurer of the Carolina Bond & Mortgage
Company, their check for $1,253.26, and received from
Prioleau an acknowledgment of the payment, "in full bond
and mortgage interest, John F. Rivers to Carolina Bond &
Mortgage Company."

In his testimony, and in a letter from his firm to the com-
pany, dated September 1, 1922, Mr. Lumpkin admits that he
knew that the company did not, at the time the check and
receipt were interchanged, have the note and mortgage in its
possession, that they had been assigned to a third party, and
that the company promised to obtain them and have the mort-
gage satisfied. This was again confirmed by a letter from
the company to Thomas & Lumpkin, attorneys, dated Sep-
tember 15, 1922, in which it was said:

"As to furnishing you satisfaction of mortgage and other
papers in this (John F. Rivers) loan, we regret we
have not yet received the same from the present holder,
which we presume is due to his still being out on his regular
route, but we will write again and trust we will receive the
same shortly."

The amount received by the company from Thomas &
Lumpkin in payment of the mortgage was never remitted
by the company to Marston; Barron died on November 14,
1922; and the present action was instituted on February 14,.
1923.

The record discloses a most extraordinary divergence of opinion in the judical minds that have been exercised over the matter involved. The master holds that the company did not act as the agent of Marston in receiving the payment; the circuit Judge impliedly agrees with the master in this respect, in holding that Barron personally acted as the agent of Marston throughout the entire transaction, and holds that his assignment of the bond and mortgage, which belonged to the company, in satisfaction of a personal obligation, of his to Marston, was a fraud upon the company; that it conveyed no title to Marston; and that the payment to the company was a payment to the one· who held the title and discharged the debt. Mr. Justice Blease holds both· that the assignment was void for the reasons stated by the Circuit Judge, and that the contention of the defendant that the company acted as the agent of Marston; I differentially suggest absolutely inconsistent positions, for in the payment it is impossible for Marston to have acted through two separate and distinct agents.

The finding of the circuit Judge that the assignment was void on account of the fraud of Barron is incompatible with the theory advanced in the answers and the keystone of the defense, that in the receipt of the payment the company acted as the agent of Marston; his finding therefore is equivalent to a finding that it was not such agent, and from this implied conclusion there is no appeal; the holding of Mr. Justice Blease to the contrary is therefore· not only inconsistent with this holding sustaining the Circuit Judge's conclusion, but clearly a holding not involved in the appeal, and therefore *coram non judice.*

As the opinion of Mr. Justice Blease holds both that the assignment was void, and that the evidence showed that the company "was the agent of the plaintiff for the collection of the mortgage debt," it becomes necessary, in addition to the suggestion that the latter proposition is not involved in the

appeal, to consider both propositions, which I shall do in the reverse order.

As to the proposition that the contention of the defendants, that the company was the agent of Marston for the collection of the mortgaged debt, should have been sustained.

This means, as I apprehend, that the circuit Judge was in error in not so holding, as is indicated by the phrase "should have been sustained." It is in the nature of an exception to the circuit decree, for it certainly did not so hold, or of a motion to sustain the decree upon other grounds, both of which naturally come from the respondents; yet there is neither exception nor motion by either of them. How this Court can adjudicate a matter which has been decided contrariwise by the master and not referred to by the circuit Judge is incomprehensible to me.

Aside from this consideration, however, I have searched the record in vain for the slightest evidence that the company was authorized to accept payment of the mortgage as the agent of Marston. His testimony is full and uncontradicted that he never knew the company in his dealings with Barron and his firm. That what money he remitted to be invested was remitted directly to Barron; the letter of January 2, 1919, inclosing check for $4,500, was addressed to Barron. The checks for interest came from the firm of which he was a member. In answer to the question, "What, if any, agreement did the Carolina Bond & Mortgage Company have with you in regard to the loans or collection?" he replied, "None whatever. I had no transactions with the Carolina Bond & Mortgage Company." In the correspondence consisting of 41 letter, 27 written to and 14 written by Marston, set out in the record, referring to investments, without a single exception, they were either signed by Barron (or his law firm) or addressed to Barron (or his law firm). The name of Carolina Bond and Mortgage Company does not appear in the address or signature to one of them, nor is there the slightest reference to that company in the body of

any of the letters. The method of handling the business demonstrates the fact that it was a personal matter between Marston and Barron and his firm; the money for investment was sent to them; they reported the various transactions of Marston; they forwarded the papers to him and the interest which had been collected by the company. Not a dollar of the money sent for investment, so far as the record here shows, found its way to the books of the company.

In addition to this, the circuit judge finds, from which there has been no appeal:

"That C. H. Barron, who later became president * * * became and was during the period now in progress, personally, plaintiff's agent for the purpose of investing his funds * * * in this state, collecting both interest and principal thereon. * * * Plaintiff testifies he had no transactions with the Carolina Bond and Mortgage Company. Mr. Prioleau, its secretary treasurer, says he had none with plaintiff except through Mr. Barron."

It was absolutely essential to sustain his ruling upon the question of fraud on Barron's part, in assigning the mortgage to Marston, for the Circuit Judge to hold that Barron was the personal agent of Marston; for if the company was the agent of Marston, there could be no vice in the assignment.

As to the proposition that the assignment in the name of the company by Barron to Marston was a fraud upon the company; that it was void and conveyed no title to Marston; and that consequently the payment to the company discharged the debt.

This proposition necessarily rests upon the assumption that the Circuit Judge was right in holding that Barron personally was the agent of Marston, and that he attempted to liquidate a personal obligation with the assets of the company.

I do not at all question the correctness of the proposition that if Barron was the personal agent of Marston in the

transaction, and assigned an asset of the company in satisfaction of a personal obligation which he owed to Marston, nothing more appearing, the assignment would be entirely unauthorized, void, and would therefore convey no title to Marston; as well might the assignment of the cashier of a bank, of assets of the bank, in satisfaction of a personal obligation, be sustained.

But there is decidedly something "more appearing" in the facts of this case, which, to my mind, renders the conclusion of the Circuit Judge, sustained in the opinion of Mr. Justice Blease, indefensible.

In the first place, the Circuit Judge was in error in finding that for the $4,500, which Marston remitted to Barron in January, 1919, he made no accounting until November, 1919, when he assigned the Rivers mortgage executed in the previous July; and that for that reason the assignment was made in satisfaction of a personal obligation of Barron, which had been outstanding for nearly a year.

The evidence shows that for that $4,500, Barron assigned the Baker, Romanstine, and Cooper mortgages, aggregating $4,500, to Marston, shortly after the receipt of that remittance; all of which were accepted by Marston except the Cooper mortgage of $1000; what was done with that $1,000 does not appear. It also shows that in November, 1919, Marston remitted $4,000 more to Barron, and on November 12th received from Barron the Church mortgage of $2,000, the Poston mortgage of $800, and the Rivers mortgage of $1,200, making $4,000. So that, so far from showing that the assignment was made in satisfaction of a past-due obligation of Barron, it was made for a present consideration of $4,000, which the president and the secretary-treasurer unquestionably were clothed with the power and authority to make. If Barron appropriated that money to his own use, certainly, Marston cannot be held responsible for the misappropriation; for these officers, had at least, ap-

parent authority to transfer for the cash an asset of 'the company.

In the next place, assuming that Barron assigned the mortgage in satisfaction of a past-due personal obligation to Marston, the evidence is overwhelming that the company has ratified such unauthoriorized act on the part of the officers who signed the assignment.

On December 16, 1919, June 9, 1920, December 10, 1920, June 13, 1921, December 7, 1921 and May 30, 1922 the company notified Rivers of the maturities of the interest installments, and in each of these letters they sold." Particularly in the letter of May 30, 1922:

"This loan has been sold and the present holder of the mortgage expects that the amount due be in hand on the date named" (the maturity of the obligation, July 1, 1922).

Not only this, but the company's "loan record card" shows the Rivers mortgage as having been "assigned to W. W. Marston, Urbanna, Va., c/o B. McK. F. & M. (Barron, McKay, Frierson & McCants, Marston's attorneys), Date 11–12–19."

Not only this, but after the secretary-treasurer had learned that Barron had personally received the proceeds of the assignment, he charged them, including the amount received for the Rivers mortgage, to the account of Barron.

In addition to this, the company actually received the payment by check of Thomas & Lumpkin which was remitted in pursuance of its letter of May 30, 1922. How can the company now deny, or Rivers for it, the validity of the assignment to Marston? In addition to this, when Thomas & Lumpkin made the payment the company notified them that the mortgage was owned by another party, that it had been sold; and in September, 1922, after Thomas & Lumpkin had persistently attempted to obtain satisfaction of the mortgage, the company wrote them:

"We regret that we have not yet received the same (referring to the mortgage), from the present holder."

I cannot conceive of more ample proof of the company's ratification of the alleged unauthorized act of Barron than this, assuming that it was unauthorized.

If the company has ratified the alleged unauthorized assignment by Barron, the validity of the assignment is established *ab initio,* Marston's title being recognized. *Cotton Oil Co. v. R. Co.,* 103 S. C., 494; 88 S. E., 360 Daniel Neg. Inst. § 394 (a); 7 R. C. L., 623–625.

The Circuit Judge has based the right of Rivers to attack the validity of the assignment squarely upon the ground that it was a fraud upon the rights of the company. It was certainly not a fraud upon the rights of Rivers, for it was a matter of indifference to him, so long as he admitted his obligation, to whom payment should be made. If, therefore, the alleged fraudulent unauthorized act of Barron has been ratified over and over again by the company, the support of the Circuit Judge's conclusion is necessarily removed. Rivers can claim no benefit from the alleged invalidity of the assignment, unless the company be in a position to do so. As to the company, the assignment is valid, and, as to Rivers, it must necessarily be valid also.

It is contended by the appellant that even if the assignment be invalid as to the company, it alone can take advantage of it, upon the ground that that is a question between the company and Marston alone, with which Rivers is not concerned. His attorney cites authorities apparently sustaining that contention. Upon examination, however, I think that the doctrine contended for applies only to cases where the maker of the paper has not paid the obligation to the original payee. Where he has, I think he has the right to show that he has paid it to the true owner; provided, that he has properly laid the ground for that contention in his pleadings. In this case, however, the defendant in his answer bases his defense, not upon the ground that at the time he made the payment the company

21—S. C.—138

was the rightful owner of the mortgage, but upon the ground that it was the agent of Marston to receive the payment, an entirely different proposition.    He concedes thereby that the assignment was valid; otherwise, the company could not have been the agent of Marston.

I think, therefore, that it has been established beyond the peradventure of a doubt that the assignment from the company to Marston is valid, both as to the company and as to Rivers.

Moreover, I think that the Circuit Judge, in holding that the assignment was avoided by the fraud of Barron, injected into and decided an issue in the case which was not presented by the pleadings, and was inconsistent with the issue which was presented.    It is apparent from an inspection of the answers of both defendants and from the testimony that they never advanced or attempted to rely during the trial upon such defense.    On the contrary, their contention was, conceding the validity of the assignment necessarily, that they were relieved by payment of the mortgage to the company, as the agent of Marston; a position obviously inconsistent with the ruling of the Circuit Judge that Barron, and not the company, was the agent of Marston, on account of whose fraud the assignment should be avoided.    Of course, if the assignment were avoided, the title to the mortgage never departed from the company, and payment to it necessarily discharged the debt, a position obviously inconsistent with the answers which conceded the validity of the assignment and sought relief upon the ground of payment to the company, as the agent of Marston.

The defendants are precluded from insisting upon the point that the assignment is void for fraud, not only upon the ground that their answers concede the validity of the assignment and claim a discharge of the debt by payment to the company, as the agent of Marston, but upon the fur-

ther ground that they have not pleaded such fraud as a defense.

Mr. Justice Blease, in his opinion, concedes the general rule that "fraud must be alleged before one may have the advantage of a defense of that nature," and that, "if the defendants had sought to establish fraud in the execution of the written instruments, such fraud should have been alleged," but denies the application of the rule in this case, for the reason that no attack is being made upon the validity of the note and mortgage. That is very true, but an attack is attempted upon the assignment, and I can see no difference between the two attacks in principle; if fraud should be alleged as to one, it should be as to the other.

The plaintiff having sued upon a note secured by mortgage, as the assignee thereof, upon possession of the securities and proof of the assignment, is entitled to the presumption of ownership. *Armour v. Hyman,* 120 S. C., 375; 113 S. E., 330. *Barrett v. Still,* 102 S. C., 19; 86 S. E., 204. *Coleman v. Dunlap,* 18 S. C., 591. *Laney v. Gregory,* 101 S. C., 144; 86 S. E., 3.

In fact, the defendants in their answers have admitted the validity of the assignment; and, even if they had not, they have admitted the facts upon which the plaintiff relies; the execution of the note and mortgage and the actual assignment of them to the plaintiff. Now, having admitted the basis of the plaintiff's case, when they seek to avoid the logical effect of those facts by an attack upon the assignments, it is essential that they allege and particularize the matter in avoidance.

In Pom. Code Remedies 789, it is said:

"Thus it is a settled rule that, when fraud is relied upon as a defense, a general allegation charging fraud or a fraudulent intent will not suffice; all the facts which the law requires as the elements of fraud, and all which are claimed to be the constituents of the fraud in the particular

case, must be averred; and their absence may destroy the intended effect of the pleading, and shut out all evidence in its support at the trial."

In Section 660 of Pomeroy, quoted with approval in *Lyles v. Bolles,* 8 S. C., 258, and *Lee v. Glenn,* 112 S. C., 202; 99 S. E., 757, it is said:

"Under a denial of the allegations of the complaint, the defendant may introduce any evidence which goes to controvert the fact which the plaintiff is bound to establish in order to sustain his action. Under the general denial of the Code, evidence of a distinct affirmative defense is not admissible; the only evidence which the defendant is entitled to give is limited to a contradiction of the plaintiffs' proof, and to the disapproval of the case made by him."

In *Lyles v. Bolles,* 8 S. C., 258, it is said:

"Under their general denial they would not be allowed to submit testimony in support of a defense which, while it sought to avoid the charge of the complaint, was necessarily forced first to confess it."

The defendants here could not possibly attack the assignment without first admitting that the note and mortgage, as well as the assignment, had been actually executed.

In *Paris v. Du Pre,* 17 S. C., 282, the Court said:

"A defense which admits the plaintiff's claim [that is the basis of it], and seeks to avoid it must be set up in the answer distinctly and with due particularity."

In *Anderson v. Merchants' Co.,* 99 S. C., 383; 84 S. E., 109, the implication is strong that the fraud relied upon was necessary to have been alleged.

In *Heiden v. R. Co.,* 84 S. C., 117; 65 S. E., 987, it is held:

"Under a general denial, only such testimony is relevant as tends to disprove the allegations of the complaint."

In Bliss on Code Pl. § 329, the general rule is declared:

"Fraud, as a defense, is sustained by affirmative facts

which do not contradict, but avoid, the legal effect of the facts stated by the plaintiff."

The author cities in note the following:

"New matter is that which, under the rules of evidence, the defendant must affirmatively establish. If the proof is thrown upon the defendant, the matter to be proved by him is new matter."

At Section 330, he states the logical rule thus:

"The new facts which may be proved under a general denial are those which show that the plaintiff's statements are untrue; also, that facts which are consistent with their truth, but show that he has no cause of action, are new matter to be pleaded."

In 5 C. J., 1015, it is said:

"Under a general denial evidence is admissible as to the fact of assignment; but is inadmissible as to the non-assignability of the claim sued upon, or to show that an admitted assignment was only colorable, or was obtained by fraud, or in regard to the consideration paid for the assignment.

"'The defense to an action upon a note that it was executed and delivered in furtherance of a plan of the payee and maker to defraud the payee's creditors in new matter, which must be specially pleaded and cannot be established under a general denal."

In *Carver v. Cigar Co.,* 16 Cal. App., 761; 118 P., 92:

"An assignment of certain money sued for could not be set aside for fraud, under an answer containing a general denial only." *Midler v. Lese,* 45 Misc. Rep., 637; 91 N. Y. S., 148.

But, aside from all this, I think that the evidence shows clearly that the defendants should not prevail in this contest.

The evidence is overwhelming that both Rivers and his agents, Thomas & Lumpkin, knew at the time that the pay-

ment was made to the company that the note and mortgage had been assigned to a third party. As between the comparative trustfulness of Rivers and Marston, in the integrity of Barron and the company, the much greater degree is chargeable to Rivers and his agents, in my opinion, notwithstanding the statement contained in the opinion of Mr. Justice Blease:

"Unfortunately for the plaintiff, he like so many others, trusted Mr. Barron and the Carolina Bond & Mortgage Company, of which he was president, too far, and he was negligent in his duty to the defendant Rivers."

His Honor the Circuit Judge has made a singularly patent error in his finding of fact that Rivers made the payment to the company, "in good faith and without notice of the assignment, or of the claims of the plaintiff." The uncontradicted written evidence shows that notices were sent to Rivers by the secretary of the company, of the dates December 16, 1919, June 9, 1920, December 10, 1920, June 13, 1921, December 7, 1921, and May 30, 1922, each and every one of them notifying him that the note and mortgage had been assigned to a third party. Particularly the letter of December 7, 1921, states:

"*This loan has been sold* and the present holder of the mortgage expects that the amount due be in hand on the date named."

The letter of May 30, 1922, calling for both principal and interest on July 1, 1922, states the same thing. In his testimony, Rivers was asked, "You got the notice saying *that the loan had been sold?*" He answered, "Yes, sir."

After Rivers had negotiated the loan with Thomas & Lumpkin, and had left with them the money with which to take up the note and mortgage which had been given to the company, Mr. Lumpkin of that firm closed the transaction. He testified that, at that time, he "understood that

he (Prioleau) did not have them (the note and mortgage)."

On September 1, 1922, Thomas & Lumpkin wrote to the company, stating:

"At that time you promised to let us have the satisfied papers within a short time."

On September 15, 1922, the company wrote to Thomas & Lumpkin:

"As to furnishing you satisfaction of mortgage and other papers in this loan, we regret we have not yet received the same from the present holder."

Mr. Prioleau testified that, when the transaction was closed, he notified Thomas & Lumpkin that the papers were not in their possession, but in the possession of the owner. Mr. Lumpkin further testified that he had followed the same course; that is, trusting the company to secure the assigned mortgages and have them marked satisfied, in previous transactions involving $150,000. All of this time Marston was quiescent and unaware of what was transpiring. He had never given the company or Barron authority to collect the principal upon the mortgage. Which of the parties was the more guilty of trusting, the company or Barron? Which was guilty of greater negligence in the matter?

The defendants therefore made payment to the Carolina Bond & Mortgage Company at their own risk, with full notice of the assignment, and since it is apparent that such company had no authority whatsoever from Marston and failed to account to him for the payment, they are clearly the less innocent of the two parties and must suffer the loss. Dan. Neg. Inst., 391. *Maxwell v. Foster,* 67 S. C., 385; 45 S. E., 927. *Westbury v. Simmons,* 57 S. C., 467; 35 S. E., 764. *Anderson v. Citizens' Bank,* 97 S. C., 453; 81 S. E., 158. *Middleton v. Cockfield,* 113 S. C., 282; 102 S. E., 328. *Martin v. Palmer,* 115 S. C., 17; 104 S. E., 308.

In addition, it is a settled and undisputed principle of law

that the mortgagor, after notice of the assignment of the mortgage, is not discharged by payment to the mortgagee.

"It is essential, however, that the equity in favor of the debtor should exist at the time of tht assignment or before notice thereof; after receiving notice, he cannot, by a payment, release, obtaining a set-off, or any other act, defeat or prejudice the right of the assignee." 2 Pom. Eq. § 704, citing numerous cases; Code Civ. Proc., 1922, § 355.

See, also, to the same effect, *Bacot v. South Carolina Loan & Trust Co.,* 132 S. C., 340; 127 S. E., 562.

I have treated this matter as if the obligation was a nonnegotiable note. I think that, notwithstanding its designation as a "bond," it is nevertheless a negotiable paper, and, if so, there could be no doubt that Marston took it free from undisclosed defenses.